UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED

UNITED STATES OF AMERICA )
)
vs. ) NO.  04-30046 MAP
)
ANTHONY MATOS )

U.S. DISTRICT COURT

## DEFENDANT'S MOTION TO RECONSIDER ORDER
## OF DETENTION

Now comes the defendant, by and through counsel, and moves this Honorable Court for a reconsideration of its previous order of detention dated September 23, 2004, and as his basis, therefore, asserts that there are changed circumstances which warrant a reconsideration of this Court's initial order including but not limited to; the defendant's employment, residence, probation status, and correction of his criminal record, as well as the defendant's proposed conditions of release as more fully set forth in the attachments to this motion.

WHEREFORE, the defendant requests this Court grant him a reconsideration of its original order.

THE DEFENDANT

BY: _____
Vincent A. Bongiorni, Esq.
95 State Street, Suite 309
Springfield, MA. 01103
(413) 732-0222
BBO #049040

## CERTIFICATE OF SERVICE

I, Vincent A. Bongiorni, Esq., hereby certify that a copy of the foregoing Defendant's Motion To Reconsider Order of Detention and Proposed Conditions of Release were served this 25th day of October, 2004, by mailing a copy first class mail, postage prepaid to Assistant United States Attorney William Welch, Esq., 1550 Main Street, Springfield, MA 01103.

_____
Vincent A. Bongiorni, Esq.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA    )
                            )
vs.                         )    NO.   04-30046 MAP
                            )
ANTHONY MATOS               )

## PROPOSED CONDITIONS OF RELEASE

The defendant proposes the following conditions of release:

1.    Posting of a $250,000 security bond secured by three parcels of real estate:
      Parcel (1) the marital residence of his mother, Mary Silvano located at 99
      Meadow Road, East Longmeadow.  (A copy of the deed, appraisal and present
      mortgage balance is attached as Exhibit A)

2.    The marital residence of Mario and Amanda Santaniello at 1085 Sumner Avenue,
      Springfield, MA.  (A copy of the deed and present appraisal is attached as Exhibit
      B.  This property has no mortgage balance.

3.    The marital residence of Gina and Larry Hanna located at 19 Mulberry Lane,
      Somers, Connecticut.  (A copy of the deed and present mortgage balance is
      attached as Exhibit C).

The net equities in the proposed properties is equal to the full amount of the surety bond
and exceeds $250,000.

The defendant will maintain full time employment, have a 10:00 p.m. curfew and be
monitored in the Elmo Program.

```
Hampden Registry of Deeds                                    Donald E. Ashe
RG300R  10/04/04  14:23:23                                      Page   1


P U B L I C   I N Q U I R Y          Documents Dated 05-10-2002 thru 00-00-0000


===============================================================================
 Book: 12319-293   Recorded: 05-10-2002 @ 1:53:42p   Inst #: 39826  Chg:N Vfy:N

 Grp: 1    Type: MORTGAGE                    Doc$: 153,000.00
 Desc: LOT 150 37/105

 Town: EAST LONGMEADOW      Addr: 99 MEADOW RD

 Gtor:  SILVANO                    PETER M (&O)
 Gtor:  SILVANO                    MARY C (&O)
 Gtee:  NEW CENTURY MORTGAGE CORP

 Return addr:      NEW CENTURY MORTGAGE CORP
                   18400 VON KARMAN SUITE 1000
                   IRVINE, CA 92612

 Recording Fee: 32.00  State excise: .00  Surcharge: 20.00
-------------------------------------------------------------------------------
```

EXHIBIT

ALL-STATE LEGAL®

1

Bk 12319 Pg291 #39825
05-10-2002 @ 01:53p

**DEED**

KNOW ALL MEN BY THESE PRESENTS, that I, Mary C. Silvano, of 99 Meadow Road, East Longmeadow, Hampden County, Massachusetts

for consideration less than $100.00

grant to Peter M. Silvano, of 99 Meadow Road, East Longmeadow, Hampden County, Massachusetts,

with quitclaim covenants,

Certain real estate situated in East Longmeadow, Hampden County, Massachusetts, being known and designated as Lot No. 150 as shown on a plan of lots recorded in Hampden County Registry of Deeds in Book of Plans 37, Page 105, said lot being bounded and described as follows:

WESTERLY        by Meadow Road, one hundred thirty (130) feet;

NORTHERLY       by land of owner unknown, one hundred thirty and 4/100 (130.04) feet;

EASTERLY        by Lot No. 137 as shown on said plan, and land of owner unknown, one hundred thirty and 21/100 (130.02) feet; and

SOUTHERLY       by Lot No. 151 as shown on said plan, one hundred twenty-seven and 52/100 (127.52) feet.

Said premises are conveyed subject to restrictive covenants in an instrument dated November 21, 1946 and recorded with said Registry of Deeds in Book 1843, Page 54, and to further restrictions that no lot will be subdivided during the lifetime of Wilfred O. Worthing and Margaret B. Worthing without written consent.

Said premises are also conveyed subject to pole and line rights of Worcester County Electric Company et al under instrument dated August 23, 1951 and recorded with said Registry of Deeds in Book 2134, Page 381.

Being the same premises conveyed to the grantee and grantor herein by deed of Patricia G. Baker dated August 31, 1985 and recorded in Hampden County Registry of Deed in Book 9235, Page 273.

Witness my hand and seal this 6th day of May, 2002.

_Donna Y. Martins_            _Mary C. Silvano_

                             Mary C. Silvano

10/04/2004  14:16    4137488454    BANKNORTH MORT SPFLD    PAGE  06/16

# MULTI-PURPOSE SUPPLEMENTAL ADDENDUM
## FOR FEDERALLY RELATED TRANSACTIONS

Borrower/Client  SILVANO, PETER                Cohen Appraisal Group
Property Address  28 MEADOW RD
City  EAST LONGMEADOW          County  HAMPDEN                    State  MA              Zip Code  01028-1398
Lender  BANKNORTH MORTGAGE GROUP

This Multi-Purpose Supplemental Addendum for Federally Related Transactions was designed to provide the appraiser with a convenient way to comply with the current appraisal standards and requirements of the Federal Deposit Insurance Corporation (FDIC), the Office of the Comptroller of Currency (OCC), The Office of Thrift Supervision (OTS), the Resolution Trust Corporation (RTC), and the Federal Reserve.

This Multi-Purpose Supplemental Addendum is for use with any appraisal. Only those statements which have been checked by the appraiser apply to the property being appraised.

☒  **PURPOSE & FUNCTION OF APPRAISAL**

The purpose of the appraisal is to estimate the market value of the subject property as defined herein. The function of the appraisal is to assist the above-named Lender in evaluating the subject property for lending purposes. This is a Federally related transaction.

☒  **EXTENT OF APPRAISAL PROCESS**

☒  The appraisal is based on the information gathered by the appraiser from public records, other identified sources, inspection of the subject property and neighborhood, and selection of comparable sales within the subject market area. The original source of the comparables is shown in the Data Source section of the market grid along with the source of confirmation, if available. The original source is presented first. The sources and data are considered reliable. When conflicting information was provided, the source deemed most reliable has been used. Data believed to be unreliable was not included in the report nor used as a basis for the value conclusion.

☐  The Reproduction Cost is based on  NA DUE TO THE AGE OF THE SUBJECT
supplemented by the appraiser's knowledge of the local market.

☐  Physical depreciation is based on the estimated effective age of the subject property. Functional and/or external depreciation, if present, is specifically addressed in the appraisal report or other addenda. In estimating the site value, the appraiser has relied on personal knowledge of the local market. This knowledge is based on prior and/or current analysis of site sales and/or abstraction of site values from sales of improved properties.

☒  The subject property is located in an area of primarily owner-occupied single family residences and the Income Approach is not considered to be meaningful. For this reason, the Income Approach was not used.

☐  The Estimated Market Rent and Gross Rent Multiplier utilized in the Income Approach are based on the appraiser's knowledge of the subject market area. The rental knowledge is based on prior and/or current rental rate surveys of residential properties. The Gross Rent Multiplier is based on prior and/or current analysis of prices and market rates for residential properties.

☐  For income producing properties, actual rents, vacancies and expenses have been reported and analyzed. They have been used to project future rents, vacancies and expenses.

☒  **SUBJECT PROPERTY OFFERING INFORMATION**

According to  MULTIPLE LISTING SERVICE
☒  has not been offered for sale in the past 30 days.                                      the subject property:
☐  is currently offered for sale for $
☐  was offered for sale within the past 30 days for $
☐  Offering information was considered in the final reconciliation of value.
☐  Offering information was not considered in the final reconciliation of value.
☐  Offering information was not available. The reasons for unavailability and the steps taken by the appraiser are explained later in this addendum.

☒  **SALES HISTORY OF SUBJECT PROPERTY**

According to  BANKERS AND TRADESMAN / ASSESSORS RECORDS
☒  has not transferred in the past twelve months.                                          the subject property:
☐  has transferred in the past twelve months.          ☒  has not transferred in the past thirty-six months.
☐                                                        ☐  has transferred in the past thirty-six months.
All prior sales which have occurred in the past twelve months are listed below and reconciled to the appraised value, either in the body of the report or in the addenda.

| Date | Sales Price | Document # | Seller | Buyer |
|------|-----------|-----------|--------|-------|
| 5-8/02 | 199 | | SILVANO, MARY | SILVANO, PETER |

☒  **FEMA FLOOD HAZARD DATA**

☒  Subject property is not located in a FEMA Special Flood Hazard Area.
☐  Subject property is located in a FEMA Special Flood Hazard Area.

| Zone | FEMA Map/Panel # | Map Date | Name of Community |
|------|-----------|----------|-------------------|
| C | 26013800068 | 6-15-1978 | EAST LONGMEADOW |

☐  The community does not participate in the National Flood Insurance Program.
☒  The community does participate in the National Flood Insurance Program.
☐  It is covered by a regular program.
☐  It is covered by an emergency program.

Page 1 of 2

Form MPA — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE



COPY

## APPRAISAL OF REAL PROPERTY

**LOCATED AT:**
\1083-1085 SUMNER AVENUE
SPRINGFIELD, MA 01118

**FOR:**
JOANNA SANTANIELLO
42 JESTINA CIRCLE
LUDLOW, MA 01056

**AS OF:**
OCTOBER 21, 2004

**BY:**
CONNIE BEGLEY, MA CERT 352

## SUMMARY OF SALIENT FEATURES

| SUBJECT INFORMATION | | |
|---|---|---|
| Subject Address | 1083-1085 SUMNER AVENUE | |
| Legal Description | DEED BOOK 3470, PAGE 186, 11/6/69; MSA 8000 | |
| City | SPRINGFIELD | |
| County | HAMPDEN | |
| State | MA | |
| Zip Code | 01118 | |
| Census Tract | 8025 | |
| Map Reference | 891 | |

| SALES PRICE | | |
|---|---|---|
| Sale Price | $ N/A | |
| Date of Sale | N/A | |

| CLIENT | | |
|---|---|---|
| Borrower / Client | N/A | |
| Lender | JOANNA SANTANIELLO | |

| DESCRIPTION OF IMPROVEMENTS | | |
|---|---|---|
| Size (Square Feet) | 2,503 | |
| Price per Square Foot | $ | |
| Location | AVERAGE/BUSY | |
| Age | 80 YEARS | |
| Condition | AVERAGE/GOOD | |
| Total Rooms | 12 | |
| Bedrooms | 5 | |
| Baths | 2 | |

| APPRAISER | | |
|---|---|---|
| Appraiser | CONNIE BEGLEY | |
| Date of Appraised Value | OCTOBER 21, 2004 | |

| VALUE | | |
|---|---|---|
| Final Estimate of Value | $ 192,000 | |

# UNIFORM RESIDENTIAL APPRAISAL REPORT
File No. 2838

## SUBJECT

| | | |
|---|---|---|
| Property Address | 1083-1085 SUMNER AVENUE | City SPRINGFIELD State MA Zip Code 01118 |
| Legal Description | DEED BOOK 3470, PAGE 186, 11/6/69; MSA 8000 | County HAMPDEN |
| Assessor's Parcel No. | 112800323 | Tax Year 2004 R.E. Taxes $ 2,098.40 Special Assessments $ 0.00 |

Borrower N/A  Current Owner MARIO & ARMANDINA SANTANIELLO  Occupant: ☒ Owner  ☒ Tenant  ☐ Vacant
Property rights appraised  ☒ Fee Simple  ☐ Leasehold  Project Type  ☐ PUD  ☐ Condominium (HUD/VA only)  HOA $ _____ /Mo.
Neighborhood or Project Name  EAST FOREST PARK  Map Reference 891  Census Tract 8025
Sale Price $ N/A  Date of Sale N/A  Description and $ amount of loan charges/concessions to be paid by seller  N/A
Lender/Client  JOANNA SANTANIELLO  Address 42 JUSTINA CIRCLE, LUDLOW, MA 01056
Appraiser  CONNIE BEGLEY  Address 82 MAIN STREET, WEST SPRINGFIELD, MA 01089

## NEIGHBORHOOD

| Location | ☐ Urban ☒ Suburban ☐ Rural | Predominant occupancy | Single family housing | Present land use % | Land use change |
|---|---|---|---|---|---|
| Built up | ☒ Over 75% ☐ 25-75% ☐ Under 25% | | PRICE $(000) AGE (yrs) | One family 93 | ☒ Not likely ☐ Likely |
| Growth rate | ☐ Rapid ☒ Stable ☐ Slow | ☒ Owner | 75 Low NEW | 2-4 family 5 | ☐ In process |
| Property values | ☒ Increasing ☐ Stable ☐ Declining | ☐ Tenant | 275+ High 120+ | Multi-family 1 | To: |
| Demand/supply | ☐ Shortage ☒ In balance ☐ Over supply | ☒ Vacant (0-5%) | Predominant | Commercial 1 | |
| Marketing time | ☒ Under 3 mos. ☐ 3-6 mos. ☐ Over 6 mos. | ☐ Vac.(over 5%) | 150 60+ | | |

Note:  Race and the racial composition of the neighborhood are not appraisal factors.
Neighborhood boundaries and characteristics:  BOUNDED NORTHERLY BY ROOSEVELT AVENUE AND SOUTH BRANCH PARKWAY, EASTERLY BY BRADLEY ROAD, SOUTHERLY BY TOWN OF EAST LONGMEADOW AND WESTERLY BY ISLAND POND ROAD AND RAILROAD TRACKS.
Factors that affect the marketability of the properties in the neighborhood (proximity to employment and amenities, employment stability, appeal to market, etc.):
THE MARKET AREA, LOCATED IN THE EAST FOREST PARK SECTION OF SPRINGFIELD, IS MAINLY DEVELOPED WITH SINGLE-FAMILY DWELLINGS OF COMPARABLE STYLES AND AGES. THE PROXIMITY TO EMPLOYMENT, SHOPPING, SCHOOLS AND OTHER CITY AMENITIES IS RATED GOOD. THERE ARE FOUR SCHOOLS LOCATED IN THE MARKET AREA INCLUDING TWO PUBLIC GRADE SCHOOLS. SUMNER AVENUE, A MAIN ARTERY IN SPRINGFIELD, PROVIDES ACCESS TO INTERSTATE 91 FOR COMMUTERS. THE EAST FOREST PARK MARKET AREA OFFERS GOOD MARKET APPEAL FOR THE CITY OF SPRINGFIELD. THE SUBJECT PROPERTY IS LOCATED IN A POCKET OF THE NEIGHBORHOOD MIXED WITH SINGLE AND TWO-FAMILY DWELLINGS.
Market conditions in the subject neighborhood (including support for the above conclusions related to the trend of property values, demand/supply, and marketing time -- such as data on competitive properties for sale in the neighborhood, description of the prevalence of sales and financing concessions, etc.):
THE MARKETING TIME FOR THE NEIGHBORHOOD IS ESTIMATED TO BE UNDER THREE MONTHS FOR MARKET SUPPORTED LISTINGS. SALES AND FINANCING CONCESSIONS ARE NOT PREVALENT IN MARKETPLACE. THERE ARE 53 ACTIVE MLS LISTINGS OF SINGLE-FAMILY DWELLINGS LOCATED IN THE EAST FOREST PARK SECTION OF SPRINGFIELD. THEY RANGE IN LIST PRICE FROM $109,900 TO $279,900. THERE IS ONE ACTIVE LISTING OF A TWO-FAMILY DWELLING FOR $172,500.

## PUD

Project Information for PUDs (if applicable) -- Is the developer/builder in control of the Home Owners' Association (HOA)?  ☐ Yes  ☐ No
Approximate total number of units in the subject project _____  Approximate total number of units for sale in the subject project _____
Describe common elements and recreational facilities:

## SITE

| | |
|---|---|
| Dimensions  50' X 100' X 50' X 100' | Topography  LEVEL AT STREET |
| Site area  .11 ACRES  Corner Lot ☒ Yes ☐ No | Size  AVERAGE |
| Specific zoning classification and description  RESIDENCE B; 1 & 2-FAMILY, 6,000-8,000 SF.,14-18 AC. | Shape  RECTANGLE |
| Zoning compliance ☐ Legal ☒ Legal nonconforming (Grandfathered use) ☐ Illegal ☐ No zoning | Drainage  APPEARS ADEQUATE |
| Highest & best use as improved: ☒ Present use ☐ Other use (explain) | View  AVERAGE |

| Utilities | Public | Other | Off-site Improvements | Type | Public | Private | | |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Street | ASPHALT | ☒ | ☐ | Landscaping | GOOD |
| Gas | ☒ | | Curb/gutter | GRANITE | ☒ | ☐ | Driveway Surface | ASPHALT |
| Water | ☒ | | Sidewalk | CONCRETE | ☒ | ☐ | Apparent easements | UTILITIES |
| Sanitary sewer | ☒ | | Street lights | ELECTRIC | ☒ | ☐ | FEMA Special Flood Hazard Area ☐ Yes ☒ No | |
| Storm sewer | ☒ | | Alley | NONE | | | FEMA Zone X  Map Date 6/17/91 | |
| | | | | | | | FEMA Map No. 2501500008B | |

Comments (apparent adverse easements, encroachments, special assessments, slide areas, illegal or legal nonconforming zoning use, etc.):  NO KNOWN ADVERSE EASEMENTS OR ENCROACHMENTS.  THE SITE IS FENCED IN AND IS WELL LANDSCAPED WITH VEGETABLE, FRUIT AND FLOWER GARDENS. THE SITE IS GRANDFATHERED, CURRENT RESIDENCE B ZONING REQUIRES 8,000 SF./18 ACRES FOR 2-FAMILY USE.

## DESCRIPTION OF IMPROVEMENTS

| GENERAL DESCRIPTION | EXTERIOR DESCRIPTION | FOUNDATION | BASEMENT | INSULATION |
|---|---|---|---|---|
| No. of Units 2 | Foundation C. BLOCK | Slab NONE | Area Sq. Ft. 1,251 | Roof ☐ |
| No. of Stories 2.5 | Exterior Walls ALUMINUM | Crawl Space NONE | % Finished 25 | Ceiling ☒ |
| Type (Det./Att.) DETACHED | Roof Surface ASPHALT SH. | Basement FULL | Ceiling SUSPEND. | Walls ☐ |
| Design (Style) 2-FAM. COL. | Gutters & Dwnspts. ALUMINUM | Sump Pump NONE | Walls DRY & PANEL | Floor ☐ |
| Existing/Proposed EXISTING | Window Type MIXED | Dampness NO SIGN | Floor C.TILE | None ☐ |
| Age (Yrs.) 80 | Storm/Screens YES | Settlement NO SIGN | Outside Entry YES | Unknown ☐ |
| Effective Age (Yrs.) 20+ | Manufactured House NO | Infestation NO SIGN | WALK-UP | |

| ROOMS | Foyer | Living | Dining | Kitchen | Den | Family Rm. | Rec. Rm. | Bedrooms | # Baths | Laundry | Other | Area Sq. Ft. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Basement | | | | 1 | | | | | | AREA | | 1,251 |
| Level 1 | | 1 | 1 | 1 | 1 | | | 2 | 1 | | | 1,279 |
| Level 2 | | 1 | 1 | 1 | | | | 3 | 1 | KIT. | | 1,224 |

Finished area above grade contains:  12 Rooms;  5 Bedroom(s);  2 Bath(s);  2,503  Square Feet of Gross Living Area

| INTERIOR | Materials/Condition | HEATING | | KITCHEN EQUIP. | | ATTIC | | AMENITIES | | CAR STORAGE: | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Floors | CT,VIN,WW,HWD/AV-GD | Type | STEAM | Refrigerator | ☐ | None | ☐ | Fireplace(s) # NONE | ☐ | None | ☐ |
| Walls | PLAST,DRY,PAN/AVG. | Fuel | GAS | Range/Oven | ☒ | Stairs | ☒ | Patio NONE | | Garage | # of cars |
| Trim/Finish | WOOD/AVERAGE | Condition | AVERAGE | Disposal | ☐ | Drop Stair | ☐ | Deck NONE | ☐ | Attached | |
| Bath Floor | C.TILE/AVG-GOOD | COOLING | | Dishwasher | ☒ | Scuttle | ☐ | Porch FIVE | ☒ | Detached | 2 |
| Bath Wainscot | C.TILE/AVG-GOOD | Central | NONE | Fan/Hood | ☒ | Floor | ☐ | Fence YES | ☒ | Built-In | |
| Doors | MIXED/AVERAGE | Other | NONE | Microwave | ☐ | Heated | ☐ | Pool NONE | ☐ | Carport | |
| | | Condition | N/A | Washer/Dryer | ☐ | Finished | ☐ | | | Driveway | 2 |

Additional features (special energy efficient items, etc.):  35 YEAR OWNER OCCUPIED 2-FAMILY WITH 6/6 ROOM UNITS.  THE KITCHENS AND BATHS ARE UPDATED. THE FIRST FLOOR HAS AN OPEN CONTEMPORARY LAYOUT. NEW FIRST FLOOR DECKING ON FRONT PORCH.
Condition of the improvements, depreciation (physical, functional, and external), repairs needed, quality of construction, remodeling/additions, etc.:  THE QUALITY OF CONSTRUCTION IS RATED AVERAGE/GOOD. THE DWELLING AND SITE IMPROVEMENTS EXHIBIT GOOD MAINTENANCE. THE PROPERTY CONDITION IS REFLECTIVE OF THE OWNER OCCUPANCY IN COMPARISON TO INVESTOR OWNED 2-FAMILY DWELLINGS IN MARKET.

## COMMENTS

Adverse environmental conditions (such as, but not limited to, hazardous wastes, toxic substances, etc.) present in the improvements, on the site, or in the immediate vicinity of the subject property.:  NONE NOTED. ASBESTOS HEATING SYSTEMS ARE TYPICAL IN MARKET AREA. THE DWELLING MAY CONTAIN LEAD PAINT SINCE IT WAS BUILT PRIOR TO 1978.

**UNIFORM RESIDENTIAL APPRAISAL REPORT**    File No. 2838

| Valuation Section | | | |
|---|---|---|---|

ESTIMATED SITE VALUE ......................................... = $   45,000

| ESTIMATED REPRODUCTION COST-NEW-OF IMPROVEMENTS: | | Comments on Cost Approach (such as, source of cost estimate, site value, square foot calculation and for HUD, VA and FmHA, the estimated remaining economic life of the property): THE COST APPROACH WAS NOT DEVELOPED DUE TO THE AGE OF THE DWELLING. CITY RECORDS INDICATE THE DWELLING WAS BUILT IN 1924. THE ESTIMATED REMAINING ECONOMIC LIFE IS 45+ YEARS. |
|---|---|---|
| Dwelling | 2,503 Sq. Ft. @ $ _____ = $ _____ | |
| | 1,251 Sq. Ft. @ $ _____ = $ _____ | |
| Garage/Carport _____ Sq. Ft. @ $ _____ = _____ | | |
| Total Estimated Cost New ........................ = $ _____ | | SEE ATTACHED FLOOR PLAN. |
| Less   Physical   Functional   External | | |
| Depreciation _____ = $ _____ | | 2,503 SQUARE FEET = TOTAL LIVING AREA |
| Depreciated Value of Improvements .............. = $ _____ | | |
| "As-Is" Value of Site Improvements .............. = $ _____ | | |
| INDICATED VALUE BY COST APPROACH ........ = $   45,000 | | |

| ITEM | SUBJECT | COMPARABLE NO. 1 | | COMPARABLE NO. 2 | | COMPARABLE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | 1083-1085 SUMNER AVENUE | 872-874 BELMONT AVENUE | | 20 POWELL AVENUE | | 57-59 ELOISE STREET | |
| | | SPRINGFIELD, MA | | SPRINGFIELD, MA | | SPRINGFIELD, MA | |
| Proximity to Subject | | 1 MILE WEST | | .2 MILES EAST | | .1 MILES SOUTH | |
| Sales Price | $   N/A | $   190,000 | | $   180,000 | | $   172,000 | |
| Price/Gross Living Area | $   N/A | $ 75.28 | | $ 66.67 | | $ 74.39 | |
| Data and/or | INSPECTION | MLS | | MLS | | MLS | |
| Verification Source | PUBLIC RECORDS | PUBLIC RECORDS | | PUBLIC RECORDS | | PUBLIC RECORDS | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. |
| Sales or Financing | | CONV. FINANCING | | CONV. FINANCING | | CONV. FINANCING | |
| Concessions | | NONE KNOWN | | NONE KNOWN | | NONE KNOWN | |
| Date of Sale/Time | | 7/9/04 | +2,800 | 7/29/04 | +1,800 | 9/14/04 | |
| Location | AVERAGE/BUSY | AVERAGE/BUSY | | AVERAGE | −4,000 | AVERAGE | −4,000 |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Site | .11 ACRES | .16 ACRES | | .11 ACRES | | .11 ACRES | |
| View | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Design and Appeal | 2-FAM. COL./GOOD | 2-FAM. COL./GOOD | | 2-FAM. COL./AVG. | +5,000 | 2-FAM. COL./AVG. | +5,000 |
| Quality of Construction | AVERAGE/GOOD | AVERAGE/GOOD | | AVERAGE | +10,000 | AVERAGE | +10,000 |
| Age | 80 YEARS | 80 YEARS | | 82 YEARS | | 82 YEARS | |
| Condition | AVERAGE/GOOD | AVERAGE/GOOD | | AVERAGE/GOOD | | AVERAGE | +5,000 |
| Above Grade | Total : Bdrms : Baths | Total : Bdrms : Baths | | Total : Bdrms : Baths | | Total : Bdrms : Baths | |
| Room Count | 12 : 5 : 2 | 12 : 6 : 2 | | 13 : 6 : 2 | | 12 : 6 : 2 | |
| Gross Living Area | 2,503 Sq. Ft. | 2,524 Sq. Ft. | | 2,700 Sq. Ft. | −2,000 | 2,312 Sq. Ft. | +2,000 |
| Basement & Finished | 1,251 SF | FULL | | FULL | | FULL | |
| Rooms Below Grade | 1 ROOM | 1 ROOM | | UNFINISHED | +1,500 | UNFINISHED | +1,500 |
| Functional Utility | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Heating/Cooling | STEAM/NONE | GAS/NONE | | STEAM/NONE | | STEAM/NONE | |
| Energy Efficient Items | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Garage/Carport | 2-CAR DET. | 2-CAR DET. | | 2-CAR DET. | | 2-CAR DET. | |
| Porch, Patio, Deck, Fireplace(s), etc. | PORCHES | PORCHES, DECK 2-FIREPLACES | −2,000 | PORCHES | +1,000 | PORCHES | |
| Fence, Pool, etc. | FENCE | FENCE | | FENCE | | FENCE | |
| Net Adj. (total) | | ☒ + ☐ − $ | 800 | ☒ + ☐ − $ | 13,300 | ☒ + ☐ − $ | 19,500 |
| Adjusted Sales Price | | | | | | | |
| of Comparable | | | 190,800 | | 193,300 | | 191,500 |

Comments on Sales Comparison (including the subject property's compatibility to the neighborhood, etc.): THE SUBJECT PROPERTY CONFORMS TO THE MARKET AREA IN AGE, STYLE, SIZE AND QUALITY. COMPS 2 AND 3 ARE ADJUSTED FOR LOCATION ON LESS TRAVELLED RESIDENTIAL STREETS. COMPS 2 AND 3 ARE ADJUSTED FOR INFERIOR QUALITY AND APPEAL. TIME ADJUSTMENT .5% @ MONTH FOR MARKET APPRECIATION. GLA $10 @ SF. COMP 2 HAD A FINISHED THIRD FLOOR COMBINED WITH THE SECOND FLOOR. MOST WEIGHT IS PLACED ON COMPS 1 AND 2.

| ITEM | SUBJECT | COMPARABLE NO. 1 | COMPARABLE NO. 2 | COMPARABLE NO. 3 |
|---|---|---|---|---|
| Date, Price and Data | N/A | N/A | N/A | N/A |
| Source, for prior sales | PUBLIC RECORDS | PUBLIC RECORDS | PUBLIC RECORDS | PUBLIC RECORDS |
| within year of appraisal | MLS | MLS | MLS | MLS |

Analysis of any current agreement of sale, option, or listing of subject property and analysis of any prior sales of subject and comparables within one year of the date of appraisal: THE COMPARABLE SALES HAVE NOT RESOLD WITHIN THE PAST YEAR. THE SUBJECT PROPERTY HAS NOT RESOLD WITHIN THE PAST THREE YEARS AND IS NOT CURRENTLY LISTED FOR SALE.

INDICATED VALUE BY SALES COMPARISON APPROACH ............................................... $   192,000
INDICATED VALUE BY INCOME APPROACH (If Applicable)   Estimated Market Rent $ 1,400 /Mo. x Gross Rent Multiplier 135 = $ 189,000

This appraisal is made ☒ "as is" ☐ subject to the repairs, alterations, inspections or conditions listed below ☐ subject to completion per plans & specifications.
Conditions of Appraisal: THIS REPORT IS INTENDED FOR USE ONLY BY JOANNA SANTANIELLO. THE REPORT WAS COMPLETED ON THE URAR FORM AT THE CLIENT'S REQUEST.

Final Reconciliation: MOST WEIGHT IS PLACED ON THE SALES COMPARISON ANALYSIS SINCE IT IS MOST INDICATIVE OF BUYER/SELLER ACTIONS IN THE MARKETPLACE. THE INCOME APPROACH WAS NOT FULLY DEVELOPED AT THE CLIENT'S REQUEST.

The purpose of this appraisal is to estimate the market value of the real property that is the subject of this report, based on the above conditions and the certification, contingent and limiting conditions, and market value definition that are stated in the attached Freddie Mac Form 439/FNMA Form 1004B (Revised   6/93   ).
I (WE) ESTIMATE THE MARKET VALUE, AS DEFINED, OF THE REAL PROPERTY THAT IS THE SUBJECT OF THIS REPORT, AS OF   OCTOBER 21, 2004
(WHICH IS THE DATE OF INSPECTION AND THE EFFECTIVE DATE OF THIS REPORT) TO BE $   192,000

| APPRAISER: | SUPERVISORY APPRAISER (ONLY IF REQUIRED): | |
|---|---|---|
| Signature | Signature | ☐ Did   ☐ Did Not |
| Name CONNIE BEGLEY | Name | Inspect Property |
| Date Report Signed OCTOBER 25, 2004 | Date Report Signed | |
| State Certification # 352   State MA | State Certification #   State | |
| Or State License # | State License #   State | |

Freddie Mac Form 70 6/93     PAGE 2 OF 2     Fannie Mae Form 1004 6-93

Form UA2 — "TOTAL 2000 for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

## MULTI-PURPOSE SUPPLEMENTAL ADDENDUM
## FOR FEDERALLY RELATED TRANSACTIONS

Connie Begley Real Estate Appraisers

| | |
|---|---|
| Borrower/Client  JOANNA SANTANIELLO | |
| Property Address  1093-1095 SUMNER AVENUE | |
| City  SPRINGFIELD   County  HAMPDEN   State  MA   Zip Code  01118 | |
| Lender  N/A | |

This Multi-Purpose Supplemental Addendum for Federally Related Transactions was designed to provide the appraiser with a convenient way to comply with the current appraisal standards and requirements of the Federal Deposit Insurance Corporation (FDIC), the Office of the Comptroller of Currency (OCC), the Office of Thrift Supervision (OTS), the Resolution Trust Corporation (RTC), and the Federal Reserve.

**This Multi-Purpose Supplemental Addendum is for use with any appraisal. Only those statements which have been checked by the appraiser apply to the property being appraised.**

### PURPOSE & FUNCTION OF APPRAISAL

The purpose of the appraisal is to estimate the market value of the subject property as defined herein. The function of the appraisal is to assist the above-named Lender in evaluating the subject property for lending purposes. This is a Federally related transaction.

### EXTENT OF APPRAISAL PROCESS

[X] The appraisal is based on the information gathered by the appraiser from public records, other identified sources, inspection of the subject property and neighborhood, and selection of comparable sales within the subject market area. The original source of the comparables is shown in the Data Source section of the market grid along with the source of confirmation, if available. The original source is presented first. The sources and data are considered reliable. When conflicting information was provided, the source deemed most reliable has been used. Data believed to be unreliable was not included in the report nor used as a basis for the value conclusion.

[X] The Reproduction Cost is based on  NEW CONSTRUCTION IN MARKET  supplemented by the appraiser's knowledge of the local market.

[X] Physical depreciation is based on the estimated effective age of the subject property. Functional and/or external depreciation, if present, is specifically addressed in the appraisal report or other addenda. In estimating the site value, the appraiser has relied on personal knowledge of the local market. This knowledge is based on prior and/or current analysis of site sales and/or abstraction of site values from sales of improved properties.

[ ] The subject property is located in an area of primarily owner-occupied single family residences and the Income Approach is not considered to be meaningful. For this reason, the Income Approach was not used.

[X] The Estimated Market Rent and Gross Rent Multiplier utilized in the Income Approach are based on the appraiser's knowledge of the subject market area. The rental knowledge is based on prior and/or current rental rate surveys of residential properties. The Gross Rent Multiplier is based on prior and/or current analysis of prices and market rates for residential properties.

[ ] For income producing properties, actual rents, vacancies and expenses have been reported and analyzed. They have been used to project future rents, vacancies and expenses.

### SUBJECT PROPERTY OFFERING INFORMATION

According to  MLS
[X] has not been offered for sale in the past 30 days.                                                    the subject property:
[ ] is currently offered for sale for $
[ ] was offered for sale within the past 30 days for $
[ ] Offering information was considered in the final reconciliation of value.
[ ] Offering information was not considered in the final reconciliation of value.
[ ] Offering information was not available. The reasons for unavailability and the steps taken by the appraiser are explained later in this addendum.

### SALES HISTORY OF SUBJECT PROPERTY

According to  PUBLIC RECORDS
[X] has not transferred in the past twelve months.                                                    the subject property:
[ ] has transferred in the past twelve months.
[ ] All prior sales which have occurred in the past twelve months are listed below and reconciled to the appraised value, either in the body of the report or in the addenda.

| Date | Sales Price | Document # | Seller | Buyer |
|---|---|---|---|---|
| | | | | |
| | | | | |

### FEMA FLOOD HAZARD DATA

[X] Subject property is not located in a FEMA Special Flood Hazard Area.
[ ] Subject property is located in a FEMA Special Flood Hazard Area.

| Zone | FEMA Map/Panel # | Map Date | Name of Community |
|---|---|---|---|
| C | 25015000008B | 6/17/91 | CITY OF SPRINGFIELD |

[ ] The community does not participate in the National Flood Insurance Program.
[X] The community does participate in the National Flood Insurance Program.
[X] It is covered by a regular program.
[ ] It is covered by an emergency program.

Page 1 of 2

## CURRENT SALES CONTRACT

☒ The subject property is currently not under contract.

☐ The contract and/or escrow instructions were not available for review. The unavailability of the contract is explained later in the addenda section.

☐ The contract and/or escrow instructions were reviewed. The following summarizes the contract:

| Contract Date | Amendment Date | Contract Price | Seller |
|---|---|---|---|
| | | | |

☐ The contract indicated that personal property was not included in the sale.
☐ The contract indicated that personal property was included. It consisted of _____

Estimated contributory value is $ _____

☐ Personal property was not included in the final value estimate.
☐ Personal property was included in the final value estimate.
☐ The contract indicated no financing concessions or other incentives. _____
☐ The contract indicated the following concessions or incentives: _____
_____

☐ If concessions or incentives exist, the comparables were checked for similar concessions and appropriate adjustments were made, if applicable, so that the final value conclusion is in compliance with the Market Value defined herein.

## MARKET OVERVIEW    Include an explanation of current market conditions and trends.

THREE    months is considered a reasonable marketing period for the subject property based on    MLS DATA AND MARKET CONDITIONS.

## ADDITIONAL CERTIFICATION

The Appraiser certifies and agrees that:

(1) The analyses, opinions and conclusions were developed, and this report was prepared, in conformity with the Uniform Standards of Professional Appraisal Practice ("USPAP"), except that the Departure Provision of the USPAP does not apply.

(2) Their compensation is not contingent upon the reporting of predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event.

(3) This appraisal assignment was not based on a requested minimum valuation, a specific valuation, or the approval of a loan.

## ADDITIONAL (ENVIRONMENTAL) LIMITING CONDITIONS

The value estimated is based on the assumption that the property is not negatively affected by the existence of hazardous substances or detrimental environmental conditions unless otherwise stated in this report. The appraiser is not an expert in the identification of hazardous substances or detrimental environmental conditions. The appraiser's routine inspection of and inquiries about the subject property did not develop any information that indicated any apparent significant hazardous substances or detrimental environmental conditions which would affect the property negatively unless otherwise stated in this report. It is possible that tests and inspections made by a qualified hazardous substance and environmental expert would reveal the existence of hazardous substances or detrimental environmental conditions on or around the property that would negatively affect its value.

## ADDITIONAL COMMENTS

_____
_____
_____

## APPRAISER'S SIGNATURE & LICENSE/CERTIFICATION

Appraiser's Signature _Connie Begly_    Effective Date OCTOBER 21, 2004    Date Prepared OCTOBER 25, 2004
Appraiser's Name (print) CONNIE BEGLEY    Phone # ( )
State MA    ☐ License    ☒ Certification # 352    Tax ID #

## CO-SIGNING APPRAISER'S CERTIFICATION

☐ The co-signing appraiser has personally inspected the subject property, both inside and out, and has made an exterior inspection of all comparable sales listed in the report. The report was prepared by the appraiser under direct supervision of the co-signing appraiser. The co-signing appraiser accepts responsibility for the contents of the report including the value conclusions and the limiting conditions, and confirms that the certifications apply fully to the co-signing appraiser.

☐ The co-signing appraiser has not personally inspected the interior of the subject property and:
☐ has not inspected the exterior of the subject property and all comparable sales listed in the report.
☐ has inspected the exterior of the subject property and all comparable sales listed in the report.
☐ The report was prepared by the appraiser under direct supervision of the co-signing appraiser. The co-signing appraiser accepts responsibility for the contents of the report, including the value conclusions and the limiting conditions, and confirms that the certifications apply fully to the co-signing appraiser with the exception of the certification regarding physical inspections. The above describes the level of inspection performed by the co-signing appraiser.

☐ The co-signing appraiser's level of inspection, involvement in the appraisal process and certification are covered elsewhere in the addenda section of this appraisal.

## CO-SIGNING APPRAISER'S SIGNATURE & LICENSE/CERTIFICATION

Co-Signing Appraiser's Signature _____    Effective Date _____    Date Prepared _____
Co-Signing Appraiser's Name (print) _____    Phone # ( )
State ____    ☐ License    ☐ Certification # ____    Tax ID # ____

Page 2 of 2

Subject Photo Page

| Borrower/Client | N/A | | | | |
|---|---|---|---|---|---|
| Property Address | 1083-1085 SUMNER AVENUE | | | | |
| City SPRINGFIELD | | County HAMPDEN | | State MA | Zip Code 01118 |
| Lender JOANNA SANTANIELLO | | | | | |



**Subject Front**

1083-1085 SUMNER AVENUE

| | |
|---|---|
| Sales Price | N/A |
| GLA | 2,503 |
| Total Rooms | 12 |
| Total Bedrms | 5 |
| Total Bathrms | 2 |
| Location | AVERAGE/BUSY |
| View | AVERAGE |
| Site | .11 ACRES |
| Quality | AVERAGE/GOOD |
| Age | 80 YEARS |

**Subject Rear**

**Subject Street**



Form PIC4x6.SR — "TOTAL 2000 for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

**Comparable Photo Page**

Borrower/Client  N/A
Property Address  1083-1085 SUMNER AVENUE
City  SPRINGFIELD          County  HAMPDEN          State  MA          Zip Code  01118
Lender  JOANNA SANTANIELLO



**Comparable 1**
872-874 BELMONT AVENUE
Proximity        1 MILE WEST
Sale Price       190,000
GLA              2,524
Total Rooms      12
Total Bedrms     6
Total Bathrms    2
Location         AVERAGE/BUSY
View             AVERAGE
Site             .16 ACRES
Quality          AVERAGE/GOOD
Age              80 YEARS

**Comparable 2**
20 POWELL AVENUE
Proximity        .2 MILES EAST
Sale Price       180,000
GLA              2,700
Total Rooms      13
Total Bedrms     6
Total Bathrms    2
Location         AVERAGE
View             AVERAGE
Site             .11 ACRES
Quality          AVERAGE
Age              82 YEARS

**Comparable 3**
57-59 ELOISE STREET
Proximity        .1 MILES SOUTH
Sale Price       179,000
GLA              2,312
Total Rooms      12
Total Bedrms     6

**Building Sketch**

| | |
|---|---|
| Borrower/Client | N/A |
| Property Address | 1083-1085 SUMNER AVENUE |
| City | SPRINGFIELD    County HAMPDEN    State MA    Zip Code 01118 |
| Lender | JOANNA SANTANIELLO |



First Floor

$26' \times 46' = 1196$
$2' \times 14' = 28$
$5' \times 11' = 55$
$1279$

Second Floor

$26 \times 46' = 1196$
$2' \times 14' = 28$
$1224$

$GLA = 2,503$ Square Feet

## Comparable Sales Map

| | |
|---|---|
| Borrower/Client   N/A | |
| Property Address   1083-1085 SUMNER AVENUE | |
| City   SPRINGFIELD | County   HAMPDEN |
| Lender   JOANNA SANTANIELLO | State   MA          Zip Code   01118 |



## Comparable Sales Map

| | |
|---|---|
| Borrower/Client | N/A |
| Property Address | 1083-1085 SUMNER AVENUE |
| City SPRINGFIELD | County HAMPDEN | State MA | Zip Code 01118 |
| Lender | JOANNA SANTANIELLO |



Form MAP.Comp —

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

    * Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgement.

## STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:** The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.

2. The appraiser has provided a sketch in the appraisal report to show approximate dimensions of the improvements and the sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

5. The appraiser has estimated the value of the land in the cost approach at its highest and best use and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

6. The appraiser has noted in the appraisal report any adverse conditions (such as, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

7. The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

8. The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.

9. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

10. The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent. The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

Connie Begley Real Estate Appraisers
Form ACR — "TOTAL 2000 for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

**APPRAISER'S CERTIFICATION:**  The Appraiser certifies and agrees that:

1. I have researched the subject market area and have selected a minimum of three recent sales of properties most similar and proximate to the subject property for consideration in the sales comparison analysis and have made a dollar adjustment when appropriate to reflect the market reaction to those items of significant variation. If a significant item in a comparable property is superior to, or more favorable than, the subject property, I have made a negative adjustment to reduce the adjusted sales price of the comparable and, if a significant item in a comparable property is inferior to, or less favorable than the subject property, I have made a positive adjustment to increase the adjusted sales price of the comparable.

2. I have taken into consideration the factors that have an impact on value in my development of the estimate of market value in the appraisal report. I have not knowingly withheld any significant information from the appraisal report and I believe, to the best of my knowledge, that all statements and information in the appraisal report are true and correct.

3. I stated in the appraisal report only my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the contingent and limiting conditions specified in this form.

4. I have no present or prospective interest in the property that is the subject to this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or the estimate of market value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property.

5. I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my compensation for performing this appraisal is contingent on the appraised value of the property.

6. I was not required to report a predetermined value or direction in value that favors the cause of the client or any related party, the amount of the value estimate, the attainment of a specific result, or the occurrence of a subsequent event in order to receive my compensation and/or employment for performing the appraisal. I did not base the appraisal report on a requested minimum valuation, a specific valuation, or the need to approve a specific mortgage loan.

7. I performed this appraisal in conformity with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place as of the effective date of this appraisal, with the exception of the departure provision of those Standards, which does not apply. I acknowledge that an estimate of a reasonable time for exposure in the open market is a condition in the definition of market value and the estimate I developed is consistent with the marketing time noted in the neighborhood section of this report, unless I have otherwise stated in the reconciliation section.

8. I have personally inspected the interior and exterior areas of the subject property and the exterior of all properties listed as comparables in the appraisal report. I further certify that I have noted any apparent or known adverse conditions in the subject improvements, on the subject site, or on any site within the immediate vicinity of the subject property of which I am aware and have made adjustments for these adverse conditions in my analysis of the property value to the extent that I had market evidence to support them. I have also commented about the effect of the adverse conditions on the marketability of the subject property.

9. I personally prepared all conclusions and opinions about the real estate that were set forth in the appraisal report. If I relied on significant professional assistance from any individual or individuals in the performance of the appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed by them in the reconciliation section of this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in the report; therefore, if an unauthorized change is made to the appraisal report, I will take no responsibility for it.

**SUPERVISORY APPRAISER'S CERTIFICATION:**  If a supervisory appraiser signed the appraisal report, he or she certifies and agrees that: I directly supervise the appraiser who prepared the appraisal report, have reviewed the appraisal report, agree with the statements and conclusions of the appraiser, agree to be bound by the appraiser's certifications numbered 4 through 7 above, and am taking full responsibility for the appraisal and the appraisal report.

**ADDRESS OF PROPERTY APPRAISED:**   1083-1085 SUMNER AVENUE, SPRINGFIELD, MA  01118

| APPRAISER: | SUPERVISORY APPRAISER (only if required): |
|---|---|
| Signature: _Connie Begley_ | Signature: _____ |
| Name:  CONNIE BEGLEY | Name: _____ |
| Date Signed:   OCTOBER 25, 2004 | Date Signed: _____ |
| State Certification #:  352 | State Certification #: _____ |
| or State License #: _____ | or State License #: _____ |
| State:  MA | State: _____ |
| Expiration Date of Certification or License:  7/21/05 | Expiration Date of Certification or License: _____ |
| | ☐ Did       ☐ Did Not Inspect Property |

Form ACR — "TOTAL 2000 for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

VOL *192* PAGE *032*



ALL-STATE LEGAL®

EXHIBIT

C

# SCHEDULE A
## (Description)

A certai piece or parcel of land with all the buildings thereon and appurtenances thereto situated in the Town of Somers, County of Tolland and State of Connecticut and being shown as Lot No. 2 on a map or plan entitled, "Subdivision Plan Hillside Estates Stafford Road  Somers, CT  Owner-Developer Thomas Pethigal  1322 Orchard Road  Berlin, Ct. Palmberg & Russo  Land Surveyors & Professional Engineers  15 Barber Pond Road  Bloomfield, Connecticut  Scale 1" = 100'  Date 11-18-88  Sheet 1 of 13  Rev. 2-8-89 Rev 5-15-89 Rev 9-8-89 Rev 9-14-89" which map is on file in the office of the Somers town Clerk in Map Volume 30, page 1480 and being more particularly bounded and described as follows:

COMMENCING  at a point located in the easterly street line of Mulberry Lane, which point marks the northwesterly corner of Lot No. 3, as shown on the aforementioned map, and the southwesterly corner of the herein described premises;

THENCE running along the arc of a curve in a northerly and easterly direction, having a radius of 285.00 feet, a distance of 396.93 feet to a point;

THENCE turning and running along the arc of a curve in an easterly direction, having a radius of 30.00 feet, a distance of 49.09 feet to a point, the last two (2) courses running along the easterly and southerly street line of Mulberry Lane;

THENCE turning and running S 21° 55' 47" E along Lot No. 1, as shown on said map, a distance of 314.16 feet to a point;

THENCE turning and running S 89° 08' 40" W along Lot No. 3, as shown on said map, a distance of 389.13 feet to the point and place of beginning.

The premises are known as 19 Mulberry Lane

FROM :

Case 3:04-cr-30046-MAP    Document 47    Filed 10/27/2004    Page 20 of 32

FROM : HANNA ELECTRIC INC

FAX NO. :                    Oct. 04 2004 08:42PM P1

PHONE NO. : 860 698 6032

Oct. 04 2004 08:43PM P2

**A. SETTLEMENT STATEMENT:**

**B. Type of Loan:**

1. ☐ FHA  2. ☐ FmHA  3. ☐ Conv. Unins.  6. File Number   7. Loan Number

4. ☐ VA  5. ☐ Conv. Ins.

OMB Approved No. 2502-0265

8. Mortgage Insurance Case Number

**C. NOTE:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

**D. NAME AND ADDRESS OF BORROWER:** Lawrence E. Hanna, Jr. and Gina J. Hanna
19 Mulberry Lane
Somers, CT, 06071

**E. NAME AND ADDRESS OF SELLER:**

**F. NAME AND ADDRESS OF LENDER:** National City Mortgage
50 Salem Street, Building A
Lynnfield, MA 01940

**G. PROPERTY LOCATION:** 19 Mulberry Lane, , CT 06071

**H. SETTLEMENT AGENT:** O'Grady and Perks

**PLACE OF SETTLEMENT:** 352A Billings Rd, Somers, CT 06071

**I. SETTLEMENT DATE:** June 7, 2004

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER:** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower: (from line 1400) | 6,753.30 | 403. | |
| 104. Payoff Westbank | 191,745.57 | 404. | |
| 105. | | 405. | |
| **ADJUSTMENTS FOR ITEMS PAID BY SELLER IN ADVANCE:** | | **ADJUSTMENTS FOR ITEMS PAID BY SELLER IN ADVANCE:** | |
| 106. City/town taxes          to | | 406. City/town taxes          to | |
| 107. County taxes          to | | 407. County taxes          to | |
| 108. Assessments          to | | 408. Assessments          to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER:** | 198,498.87 | **420. GROSS AMOUNT DUE TO SELLER:** | |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER:** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amounts of new loan(s) | 290,000.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| **ADJUSTMENTS FOR ITEMS UNPAID BY SELLER:** | | **ADJUSTMENTS FOR ITEMS UNPAID BY SELLER:** | |
| 210. City/town taxes          to | | 510. City/town taxes          to | |
| 211. County taxes          to | | 511. County taxes          to | |
| 212. Assessments          to | | 512. Assessments          to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER:** | 290,000.00 | **520. TOTAL REDUCTIONS IN AMOUNT DUE SELLER:** | |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER:** | | **600. CASH AT SETTLEMENT TO/FROM SELLER:** | |
| 301. Gross amount due from borrower (line 120) | 198,498.87 | 601. Gross amount due to seller (line 420) | |
| 302. Less amount paid by/for borrower (line 220) | 290,000.00 | 602. Less total reductions in amount due seller (line 520) | |
| 303. CASH (☐ FROM) (☒ TO) BORROWER: | $91,501.13 | 603. CASH (☐ TO) (☐ FROM) SELLER: | |

HUD-1 (3/1986) RESPA, HB 4305.2

PAGE 1



**Advantage**
71 Hazard Avenue
Enfield, Connecticut 06082
Business (860) 749-0721
Fax (860) 749-5766
Toll Free (800) 229-6020

Re: Brokers Price Opinion: 19 Mulberry Lane, Somers, CT

Prepared for:  Gina Hanna

Pursuant to your recent request, enclosed please find a market evaluation of: 19 Mulberry Lane, Somers, CT that reflects an estimate of the property's market value in today's single family residential market.

On Sunday the 24ᵗʰ of October, I visually inspected the property and found the property to be in overall very good condition. This visual inspection is not to be construed as a judgment as to the structural and mechanical condition of the property, nor do I make any representations with respect to the status of the property's title or the property's disposition in any other situation. This opinion is simply an objective market value opinion.

The estimated market value was arrived at by carefully considering the condition of comparable properties, the data of comparable properties as found in town records, the data available through the Realtor's ® Multiple Listing Service and consultation with licensed appraisers as well as other licensed Realtor's ®.

Presently, in this area we are experiencing a true seller's market in that interest rates are low and there are more buyers than homes for sale. Recent MLS sales data confirms that properties priced within their market value range are selling in approximately 60-90 days.

Any person licensed in the State of Connecticut as a real estate broker or salesperson may estimate the value of real estate as part of a market analysis performed for the purpose of a prospective listing or sale of real estate, provided the estimate is not referred to or construed as an appraisal. Therefore, the enclosed Brokers Price Opinion for your property is not an appraisal, for while I am a licensed Real Estate Broker, I am not licensed as an appraiser. The sole purpose of this market analysis is to assist you in deciding upon a reasonable, competitive listing price for your home.

It is my opinion that an appropriate listing price would be $469,000.00 to $479,900.00 with an expectation of a sales price in the range of $465,900.00 to $475,900.00.

Very truly yours,

*Kraig Arvisais*

Kraig Arvisais
Real Estate Broker
Licensed CT/MA

Each Office is Independently Owned And Operated

☒ **CURRENT SALES CONTRACT**

☒ The subject property is currently under contract.
☐ The contract and/or escrow instructions were not available for review. The unavailability of the contract is explained later in the addenda section.

☐ The contract and/or escrow instructions were reviewed. The following summarizes the contract:

| Contract Date | Amendment Date | Contract Price | Seller |
|---|---|---|---|

☐ The contract indicated that personal property was not included in the sale.
☐ The contract indicated that personal property was included. It consisted of _____

☒ Personal property was not included in the final value estimate.                    Estimated contributory value is $ _____
☐ Personal property was included in the final value estimate.
☐ The contract indicated no financing concessions or other incentives.
☐ The contract indicated the following concessions or incentives _____

☐ If concessions or incentives exist, the comparables were checked for similar concessions and appropriate adjustments were made, if applicable, so that the final value conclusion is in compliance with the Market Value defined herein.

☒ **MARKET OVERVIEW**                    Include an explanation of current market conditions and trends.

___ months is considered a reasonable marketing period for the subject property based on ___ BAYSTATE MULTIPLE LISTING SERVICE

☒ **ADDITIONAL CERTIFICATION**

The Appraiser certifies and agrees that:
(1) The analyses, opinions and conclusions were developed, and this report was prepared, in conformity with the Uniform Standards of Professional Appraisal Practice (USPAP), except that the Departure Provision of the USPAP does not apply.
(2) Their compensation is not contingent upon the reporting of predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event.
(3) This appraisal assignment was not based on a requested minimum valuation, a specific valuation, or the approval of a loan.

☒ **ADDITIONAL (ENVIRONMENTAL) LIMITING CONDITIONS**

The value estimated is based on the assumption that the property is not negatively affected by the existence of hazardous substances or detrimental environmental conditions unless otherwise stated in this report. The appraiser is not an expert in the identification of hazardous substances or detrimental environmental conditions. The appraiser's routine inspection of and inquiries about the subject property did not develop any information that indicated any apparent significant hazardous substances or detrimental environmental conditions which would affect the property negatively unless otherwise stated in this report. It is possible that tests and inspections made by a qualified hazardous substance and environmental expert would reveal the existence of hazardous substances or detrimental environmental conditions on or around the property that would negatively affect its value.

☐ **ADDITIONAL COMMENTS**

☒ **APPRAISER'S SIGNATURE & LICENSE/CERTIFICATION**

Appraiser's Signature _____
Appraiser's Name (print) WILLIAM E. MINT JR    Effective Date JUNE 26, 2004    Date Prepared JUNE 28, 2004
State MA    ☐ License    ☐ Certification #    VA LIC RE APPR 870061    Phone # (813) 732-1412    Tax ID # 04-3488833

☒ **CO-SIGNING APPRAISER'S CERTIFICATION**

☐ The co-signing appraiser has personally inspected the subject property, both inside and out, and has made an exterior inspection of all comparable sales listed in the report. The report was prepared by the appraiser under direct supervision of the co-signing appraiser. The co-signing appraiser accepts responsibility for the contents of the report including the value conclusions and the limiting conditions, and confirms that the certifications apply fully to the co-signing appraiser.
☒ The co-signing appraiser has not personally inspected the interior of the subject property and
☒ has not inspected the exterior of the subject property and all comparable sales listed in the report.
☒ has inspected the exterior of the subject property and all comparable sales listed in the report.
☒ The report was prepared by the appraiser under direct supervision of the co-signing appraiser. The co-signing appraiser accepts responsibility for the contents of the report, including the value conclusions and the limiting conditions, and confirms that the certifications apply fully to the co-signing appraiser with the exception of the certification regarding physical inspections. The above describes the level of inspection performed by the co-signing appraiser.
☐ The co-signing appraiser's level of inspection, involvement in the appraisal process and certification are covered elsewhere in the addenda section of this appraisal.

☒ **CO-SIGNING APPRAISER'S SIGNATURE & LICENSE/CERTIFICATION**

Co-Signing Appraiser's Signature _____
Co-Signing Appraiser's Name (print) JOHN A. BROWN JR    Effective Date JUNE 26, 2004    Date Prepared JUNE 28, 2004
State MA    ☐ License    ☒ Certification #    CERT. RES. R.E. 44587    Phone # (813) 732-1412    Tax ID # 04-2495638

Page 2 of 2

## ADDENDUM

### APPRAISAL DEVELOPMENT AND REPORTING PROCESS:

This is a summary appraisal report, which is intended to comply with the reporting requirements set forth under standards rule 2-2b of the uniform standards of professional appraisal practice for a summary appraisal report. As such, it presents only summary discussions of the data, reasoning, and analyses that were used in the appraisal process to develop the appraiser's opinion of value. Supporting documentation that is not provided with the report concerning the data, reasoning, and analyses is retained in the appraiser's file. The depth of the discussion contained in this report is specific to the needs of the client and for the intended use stated in the report. The appraiser is not responsible for unauthorized use of this report.

To develop the opinion of value, the appraiser performed a complete appraisal process, as defined by the uniform standards of professional appraisal practice. This means that no departures from standard 1 were invoked.

This appraisal is an opinion of value.

This appraisal is intended for use by our client and their assignees, for financing purposes only. No other use/users is intended by the appraisal.

This is a summary report of a complete appraisal

The signatures used in this summary appraisal report are digitally rendered and assigned to this report after review by the appraiser and the supervisory appraiser. These digital signatures enable digital security features in our report and are intended for use as original signatures.

1. PURPOSE/FUNCTION OF THE APPRAISAL

THE PURPOSE/FUNCTION OF THIS REPORT IS TO ESTIMATE THE MARKET VALUE OF THE SUBJECT PROPERTY AS OF THE DATE OF INSPECTION FOR MORTGAGE/LOAN PURPOSES.

2. SCOPE OF THE APPRAISAL

THE FOLLOWING STEPS WERE FOLLOWED IN ARRIVING AT THE FINAL ESTIMATE OF VALUE INDICATED IN THIS REPORT:

A.  AFTER RECEIVING THE ASSIGNMENT, A PRELIMINARY SEARCH FOR ALL AVAILABLE RESOURCES WAS MADE TO DETERMINE MARKET TRENDS, INFLUENCES AND OTHER SIGNIFICANT FACTORS AFFECTING THE VALUE OF THE SUBJECT.

B.  A PHYSICAL INSPECTION OF THE PROPERTY WAS PERFORMED. ALTHOUGH DUE DILIGENCE WAS EXERCISED, THE APPRAISER IS NOT AN EXPERT IN MATTERS PERTAINING TO STRUCTURAL INTEGRITY, GEOLOGY OR ENVIRONMENTAL HAZARDS. NO WARRANTY IS GIVEN PERTAINING TO THESE MATTERS. AS NEEDED, INSPECTIONS BY PROFESSIONALS MIGHT BE RECOMMENDED WITH THE FINAL VALUE ESTIMATE SUBJECT TO THESE REPORTS AND ANY SUBSEQUENT RECOMMENDATIONS AND/OR REQUIREMENTS.

C.  A SECOND REVIEW OF THE DATA WAS THEN MADE, WITH THE MOST RELEVANT FACTORS EXTRACTED AND CONSIDERED NECESSARY. CONTACT MADE WITH PARTIES TO THE TRANSACTION, MARKET FACTORS WERE WEIGHTED AND THEIR INFLUENCE ON THE VALUE OF THE SUBJECT CONSIDERED.

D.  THE APPRAISAL REPORT WAS THEN COMPLETED IN ACCORDANCE WITH THE STANDARDS AND GUIDELINES OF USPAP AND FIRREA.

3. INTENT OF THE APPRAISAL

THE INTENT OF THIS APPRAISAL IS TO ESTIMATE THE MARKET VALUE OF THE SUBJECT WHILE COMPLYING WITH THE UNIFORM STANDARDS OF PROFESSIONAL APPRAISAL PRACTICE (USPAP)

4. COMPETENCY OF THE APPRAISER

THE APPRAISER HAS THE APPROPRIATE KNOWLEDGE AND EXPERIENCE TO COMPETENTLY COMPLETE THIS REPORT.

5. PROHIBITED INFLUENCES

THIS APPRAISAL ASSIGNMENT WAS NOT BASED UPON A REQUESTED MINIMUM VALUATION, SPECIFIC VALUATION OR APPROVAL OF A LOAN. EMPLOYMENT OF THE APPRAISER WAS NOT CONDITIONED UPON THE APPRAISAL PRODUCING A SPECIFIC VALUE OR VALUE WITHIN A GIVEN RANGE. NEITHER EMPLOYMENT NOR COMPENSATION ARE BASED UPON APPROVAL OF ANY RELATED LOAN APPLICATION.

6. PERSONAL PROPERTY

ANY PERSONAL PROPERTY INVOLVED IN THE TRANSACTION HAS BEEN EXCLUDED FROM THE VALUATION OF THE REAL PROPERTY. SHOULD A TRANSACTION WHICH INCLUDES PERSONAL PROPERTY OF SUFFICIENT VALUE TO AFFECT THE MARKET VALUE OF THE REAL PROPERTY BE EVIDENT A SEPARATE ASSESSMENT OF THE PERSONAL PROPERTY OR INTANGIBLE ITEMS WILL BE INCLUDED.

7. THREE APPROACHES TO VALUE

I.    THE APPRAISER HAS MADE REASONABLE EFFORT TO EMPLOY THE THREE RECOGNIZED APPROACHES TO VALUE. AS SINGLE FAMILY RESIDENCES ARE LESS COMMONLY PURCHASED FOR INVESTMENT PURPOSES, THE USE OF THE INCOME APPROACH FOR VALUATION OF THE SAME WILL ONLY BE USED:

A.  AT THE REQUEST OF THE CLIENT, OR ON NON-OWNER OCCUPIED RESIDENCES.
B.  WHEN SUFFICIENT MARKET EVIDENCE EXISTS IN A NEIGHBORHOOD TO INDICATE THAT RENTAL PROPERTIES OR INVESTOR PURCHASES ARE COMMON AND MEASURABLE AND THE ANALYSIS OF SAME CONTRIBUTES TO THE APPRAISAL PROCESS.

II.  FOR INCOME PRODUCING PROPERTIES, ACTUAL RENTS, VACANCIES AND EXPENSES HAVE BEEN REPORTED AND ANALYZED. THEY HAVE BEEN USED TO PROJECT FUTURE RENTS, VACANCIES AND EXPENSES.

THE INCOME APPROACH IS GENERALLY CONSIDERED TO BE LESS INDICATIVE AND RELIABLE THAN THE COST OR MARKET APPROACH. DUE TO LACK OF SUFFICIENT, SUPPORTABLE INFORMATION.

10/04/2004  14:16    4137488454              BANKNORTH MORT SPFLD              PAGE  10/16

## ZONING BYLAWS FOR THE TOWN OF EAST LONGMEADOW

**3.4   EXISTING BUILDINGS, STRUCTURES AND USES**

This Bylaw shall not apply to buildings or structures, nor to the existing use of any buildings or structures, or of land, lawfully in existence or lawfully begun prior to the adoption of this Bylaw, or to a building or special permit issued before the first publication of notice of the public hearing on such ordinance or Bylaw required by Section Five of Massachusetts General Laws, Chapter 40A, but shall apply to any change or substantial extension of such use, to a building or special permit issued after the first notice of said public hearing, to any reconstruction, extension or structural change of such structure and to any alteration of a structure begun after the first notice of said public hearing to provide for its use for a substantially different purpose or for the same purpose in a substantially different manner or to a substantially greater extent except where alteration, reconstruction, extension or structural change in a single or two family residential structure does not increase the non-conforming nature of the said structure.

**3.5   NON-CONFORMING STRUCTURES AND USES**

A building, structure or land which, at the time of enactment of this zoning by-law revision is being put to a legal non-conforming use may be:

**3.51**   Continued in that use, except as provided in section 3.4.

**3.52**   Altered or enlarged in that use, but only after the granting of a special permit therefor by the Special Permit Granting Authority upon the determination said Special Permit Granting Authority that such change, alteration, or enlargement shall not be substantially more detrimental to the neighborhood than the existing non-conforming use.

Construction or operations under a building or special permit shall conform to any subsequent amendment of the Zoning Bylaw, unless the use or construction is commenced within a period of six (6) months after the issuance of the permit and in cases involving construction, unless such construction is continued through to completion as continuously and expeditiously as is reasonable.

**3.53**   Change to a use deemed less detrimental by the SPGA, provided that when so changed, it shall not be returned to its former use.

**3.54**   When a building in which there is a non-conforming use is damaged or destroyed by fire, collapse, explosion, or other casualty, it may be reconstructed, repaired, or rebuilt only to its previous floor area and cubicle content, provided such reconstruction or rebuilding is commenced within six (6) months of such damage or destruction and provided the non-conforming use is continued.

**3.55**   When a non-conforming use is discontinued, as evidenced by lack of use or vacancy for a continuous period of twenty-four (24) months, (or by the substitution of a less detrimental use), or changed to a conforming use, such non-conforming use shall not thereafter be re-established, and all future uses shall be in conformity with the provisions of this By-law.

## GODWIN APPRAISAL GROUP



**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of the title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to any comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgement.

## STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:** The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.

2. The appraiser has provided a sketch in the appraisal report to show approximate dimensions of the improvements and the sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

5. The appraiser has estimated the value of the land in the cost approach at its highest and best use and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

6. The appraiser has noted in the appraisal report any adverse conditions (such as, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

7. The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

8. The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.

9. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

10. The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent. The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

Godwin Appraisal Group
Form ACR — TOTAL for Windows® appraisal software by a la mode, inc. — 1-800-ALAMODE

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have researched the subject market area and have selected a minimum of three recent sales of properties most similar and proximate to the subject property for consideration in the sales comparison analysis and have made a dollar adjustment when appropriate to reflect the market reaction to those items of significant variation. If a significant item in a comparable property is superior to, or more favorable than, the subject property, I have made a negative adjustment to reduce the adjusted sales price of the comparable and, if a significant item in a comparable property is inferior to, or less favorable than the subject property, I have made a positive adjustment to increase the adjusted sales price of the comparable.

2. I have taken into consideration the factors that have an impact on value in my development of the estimate of market value in the appraisal report. I have not knowingly withheld any significant information from the appraisal report and I believe, to the best of my knowledge, that all statements and information in the appraisal report are true and correct.

3. I stated in the appraisal report only my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the contingent and limiting conditions specified in this form.

4. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or the estimate of market value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property.

5. I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my compensation for performing this appraisal is contingent on the appraised value of the property.

6. I was not required to report a predetermined value or direction in value that favors the cause of the client or any related party, the amount of the value estimate, the attainment of a specific result, or the occurrence of a subsequent event in order to receive my compensation and/or employment for performing the appraisal. I did not base the appraisal report on a requested minimum valuation, a specific valuation, or the need to approve a specific mortgage loan.

7. I performed this appraisal in conformity with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place as of the effective date of this appraisal, with the exception of the departure provision of those Standards, which does not apply. I acknowledge that an estimate of a reasonable time for exposure in the open market is a condition in the definition of market value and the estimate I developed is consistent with the marketing time noted in the neighborhood section of this report, unless I have otherwise stated in the reconciliation section.

8. I have personally inspected the interior and exterior areas of the subject property and the exterior of all properties listed as comparables in the appraisal report. I further certify that I have noted any apparent or known adverse conditions in the subject improvements, on the subject site, or on any site within the immediate vicinity of the subject property of which I am aware and have made adjustments for these adverse conditions in my analysis of the property value to the extent that I had market evidence to support them. I have also commented about the effect of the adverse conditions on the marketability of the subject property.

9. I personally prepared all conclusions and opinions about the real estate that were set forth in the appraisal report. If I relied on significant professional assistance from any individual or individuals in the performance of the appraisal or the preparation of the appraisal report, I have named such individual(s) and disclosed the specific tasks performed by them in the reconciliation section of this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in the report; therefore, if an unauthorized change is made to the appraisal report, I will take no responsibility for it.

**SUPERVISORY APPRAISER'S CERTIFICATION:** If a supervisory appraiser signed the appraisal report, he or she certifies and agrees that: I directly supervise the appraiser who prepared the appraisal report, have reviewed the appraisal report, agree with the statements and conclusions of the appraiser, agree to be bound by the appraiser's certifications numbered 4 through 7 above, and am taking full responsibility for the appraisal and the appraisal report.

ADDRESS OF PROPERTY APPRAISED: 92 MEADOW RD, EAST LONGMEADOW, MA 01028-1238

**APPRAISER:**

Signature: _[signature]_
Name: WILLIAM E. HUNT JR
Date Signed: June 24, 2004
State Certification #:
or State License #: MA LIC RE APPR #79961
State: MA
Expiration Date of Certification or License: 04/07/07

**SUPERVISORY APPRAISER (only if required):**

Signature: _[signature]_
Name: JOHN A. COHEN III
Date Signed: June 24, 2004
State Certification #: CERT MBB, R.E. #4502
or State License #:
State: MA
Expiration Date of Certification or License: 09/05/08

☐ Did   ☒ Did Not Inspect Property

Freddie Mac Form 439 6-93                          Page 2 of 2                          Fannie Mae Form 1004B 6-93

Form ACR — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE



Subject Photos

| Borrower/Client  SILVANO, PETER | | |
| Property Address  99 MEADOW RD | | |
| City  EAST LONGMEADOW | County  HAMPDEN | State  MA |
| Lender  BANKNORTH MORTGAGE GROUP | | Zip Code  01086-1336 |



Subject Front
99 MEADOW RD



Subject Rear



Subject Street

Form PICPIX.TR — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

10/04/2004  14:16    4137488454                    BANKNORTH MORT SPFLD                    PAGE  15/16



**Comparable Photo Page**

Borrower/Client SILVANO, PETER
Property Address 99 MEADOW RD
City EAST LONGMEADOW                                County HAMPDEN                          State MA                          Zip Code 01028-1338
Lender BANKNORTH MORTGAGE GROUP



**Comparable 1**
124 MEADOW RD



**Comparable 2**
220 CHESTNUT ST



**Comparable 3**
24 GATES AVE

Form PICPIX.LAN — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

10/04/2004  14:16    4137488454

BANKNORTH MORT SPFLD

PAGE  16/16

**Location Map**

| | | | |
|---|---|---|---|
| Borrower/Client | SILVANO, PETER | | |
| Property Address | 89 MEADOW RD | | |
| City EAST LONGMEADOW | | | |
| Lender BANKNORTH MORTGAGE GROUP | County HAMPDEN | State MA | Zip Code 01028-1338 |



Form MAP.LOC — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

EXHIBIT
B

BOOK 3470 PAGE 186

MASSACHUSETTS WARRANTY DEED INDIVIDUAL SHORT FORM (4)

## 27915

KNOW ALL MEN BY THESE PRESENTS that We, MARLIO CIUFFONI and LIVIA CIUFFONI, aka LIVIA M. CIUFFONI, husband and wife, and ELIO L. TONON and IANA V. TONON husband and wife, all

of                    Springfield                    Hampden County, Massachusetts,

for consideration paid, grant to MARIO SANTANIELLO and AMANDINA SANTANIELLO, husband and wife, as tenants by the entirety and not as tenants in common,

of  21 Broad Street, Springfield, Massachusetts,

with warranty covenants

the land in Springfield, Hampden County, Massachusetts shown and designated as Lot #2 (two) on a plan of lots recorded in Hampden County Registry of Deeds in Book of Plans 3, Page 45, said lot being more particularly bounded and described as follows:

NORTHERLY    by Sumner Avenue, fifty (50) feet;

EASTERLY     by Elaine Street, one hundred (100) feet;

SOUTHERLY    by lot #3 (five) as shown on said plan, fifty (50) feet; and

WESTERLY     by lot #1 (one) as shown on said plan, one hundred (100) feet.

Being premises known as 1083 Sumner Avenue.

Being premises conveyed to the grantors herein by deed of Ormsby E. Whitney et ux dated November 2, 1954 and recorded in Hampden County Registry of Deeds in Book 2507, Page 342.

The Consideration for the Conveyance was $19,500.00

DEEDS EXCISE
$444.5

WITNESS our hands and seal this  5th  day of  November  19 69

[signatures]

Commonwealth of Massachusetts

Hampden                              November 5,      19 69

Then personally appeared the above named Marlio Ciuffoni, Livia Ciuffoni, Elio L. Tonon and Iana V. Tonon

and acknowledged the foregoing instrument to be  their  free act and deed, before me,

RECEIVED
NOV 8 1969