UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | NO. 04-30046 MAP |
| ) | |
| ANTHONY MATOS ) | |

**DEFENDANT'S OBJECTIONS TO PRESENTENCE REPORT**

Now comes the defendant, by and through counsel, and makes the following objections to the Presentence Report:

¶33 - The defendant objects to the allegation of fact contained in paragraph 33 to the extent it refers to non relevant conduct of others for which the defendant believes he has no responsibility under the U.S.S.C. Sentencing Guideline.

¶51 - The defendant objects to the assertion of fact contained in paragraph 51. Defendant Matos met Petropoulos in early 1999 when each purchased a 1/3 interest in Club Chaos, a lounge on Worthington Street in Springfield, MA. While working at the lounge with Petropoulos, Matos observed Bergdoll asking Petropoulos for $17,000.00 to avoid losing an interest in a house on Belmont Avenue. Petropoulos advised Matos it was a good deal, and Matos provided Bergdoll $17,000.00 cash to purchase the property, sight unseen. Approximately 45 days later Matos learned from Petropoulos that Bergdoll has sold the house and Matos had $38,000.00 coming to him as his share. Matos was en route to the automobile auction in Connecticut with Petropoulos when he learned the propery had sold. After Matos observed the profitability of this transaction, Matos, on his own, entered into purchase and sales agreement for 11 properties in foreclosure through a real estate agent named William Passara in the late summer of 1999. Matos was able to "lock in" these properties with an $11,000.00 investment. Matos informed Petropoulos of his purchases while they were involved in dissolving Matos interest in Club Chaos. Petropoulos informed Matos he could sell the properties for him. These properties were:

       1. 29 Warriner Avenue
       2. 32 Austin Street
       3. 111 King Street
       4. 170 Massasoit Street
       5. 851 Chicopee Street
       6. 20 & 45 Montmorenci Street
       7. 102 Gilbert Avenue

        8. 75 Clifton Street
        9. 78 Clarendon Street
        10. 96 Kensington Street

      Petropoulos sold all of these properties and received half of the proceeds. Matos was informed the down payments listed on the Purchase and Sale Agreement were fraudulent and that some of the mortgage broker received a portion of the sales for steering purchaser. Defendant had no other relationship with anyone else referenced in this paragraph.

      ¶52 - The defendant objects to paragraph 52 to the following extent; the defendant had a partnership with Petropoulos only. The defendant purchased only one property with defendant Bergdoll and was not a partner with Romeo or others. The defendant and Petropoulos split over money as well as Petropoulos' refusal to invest any moniees into the houses they sold. Defendant Matos split from Petropoulos before the investigation leading to the indictment began. All properties purchased by the defendant Matos after the split were fully rehabilitated and repaired. Sale agreements for these properties inaccurately reflect the true terms of the sale and the purchaser's financial status. Afer splitting from Petropoulos, Matos began to build single family homes beginning in 2002 and continuing to the present.

      ¶53 thru ¶76 - The defendant objects to paragraphs 53 thru 76 and in response directs the Probation Officer's attention to his objection to paragraph 51 and 52.

      ¶149 thru ¶155 - The defendant objects to the factual assertion included in paragraphs 149 thru 155. The defendant did not own or participate in the sale of 21 Marble Street. The defendant has reviewed the Presentence Report and the indictment and asserts that in addition to 21 Marble Street, the defendant Matos had no interest in 189 Bay Street, 32 Ozark Street, 51 Winthrop Street, and 32 Johnson Street. Although Attorney Innarelli's IOLTA account reflects checks for these transactions the defendant alleges Innarelli routinely made mistakes in the remitter section of the checks and paid monies due from earlier transactions from the proceeds of later transactions The defendant had no financial interest in those properties.

      ¶172 thru ¶178 - The defendant objects to the factual assertion included within the above referenced paragraphs as follows; defendant Matos did provide a working furnace and kitchen cabinets. Defendant Matos learned the purchaser refinanced the property and installed new cabinetry, months after the initial purchase.

¶190 thru ¶196 - Defendant's objection. . . see defendant's objection to paragraph 149 thru 155 supra.

¶254 thru ¶261 - The defendant objects to the factual assertion in the above paragraph as follows; the defendant was the sole person involved in the transaction and defendant, Romeo, had nothing to do with it. The defendant claims this residence was completely refurbished. The furnace did pass inspection and no evidence of a documented leak in the oil tank. Defendant personally spoke with Mr. Rodriguez who concluded the tank was leaking based solely upon the amount of oil he was using during the winter.

¶262 - Defendant objects to paragraph 262 to the extent this paragraph alleges conduct for which the defendant is not criminally responsible as relevant conduct.

¶263 - Defendant's objection to paragraph 263. . . see defendant's answer to paragraphs 51, 52, 53, 149 thru 55, 172 thru 178, 190 thru 196, and 254 thru 261 above.

¶270 - The defendant objects to paragraph 270 to the extent it adopts the court's definition of loss and to the extent it alleges forty six (46) properties for which the defendant is responsible. The defendant incorporates, by reference, the defendant's objection to the loss calculation for the reasons and basis set forth in the defendant's joint motion establishing an appropriate loss criterion. Although the report identifies forty six properties, the defendant alleges the number to be forty. The 21 Marble Street, 132 Johnson Street, 32 Ozark Street, 189 Bay Street, and 51 Winthrop Street were not properties the defendant had any financial interest in, nor did he receive proceeds from their sales. The defendant offers to establish at an Evidentiary Hearing that Innarelli often paid monies owed defendant from a property he was involved in the sale of; from the proceeds of sales for other individuals. The total sale price of those 5 properties, as evidenced by the report was $313,162.00. The report details the original purchase price of only three of those properties, 21 Marble Street, 189 Bay Street, and 32 Ozark Street.

¶271 - Base Offense Level - Defendant objects to paragraph 271 to the extent 16 points are added to the Base Offense Level based upon a $1,970,667.00 loss. Defendant believes loss should be more than $400,000.00 and 14 points should result under U.S.S.G. 2B.1.1. Defendant objects to 4 level enhancement under U.S.S.G. 2B 1(b)(2)(B). Defendant was not involved with more than 50 victims. Defendant participated in sale of 41 properties which were not financed through eleven separate lending institutions. Base Offense Level should be Level 20.

¶273 - Defendant's objection. . . U.S.S.G. §3B1.1(C) - no evidence defendant managed or supervised several "runners" - no evidence to support conclusion "runners" so called were anything more than self interested associates who sought to profit individually.

¶276 - Objection - Defendant's offense level should be Level 21.

¶277 - Total Offense Level should be 18.

¶331 - Financial Condition / Ability to Pay - The defendant objects to the Net Worth analysis to the extent the defendant's Net Worth is assumed to be over $1.5 million without explanation. The defendant's spouse/significant other holds title to several parcels of real estate with dwellings in various stages of construction. As can be seen from an analysis of defendant's cash flow, the defendant is running approximately $4,000.00 per month in arrears. The properties which make up the defendant's Net Worth, unless completed and sold, will not support the current Net Worth figure. It is anticipated that if the properties are foreclosed, which is a realistic probability if the defendant is incarcerated before the completion of the work in progress, his Net Worth would decrease significantly.

¶350 thru ¶352 - The defendant objects to paragraphs 350 thru 352 as follows; To the extent the defendant claims 18 U.S.C. sec. 3663-3664 does not authorize restitution or that restitution which is not established by facts found beyond a reasonable doubt violates the holding in Booker. Additionally, defendant alleges Title 18 U.S.C. 3664 (j)(1), 2 (A)(B) controls both the payment and allocation of restitution.

¶356 - Defendant's objection. . . the defendant believes the defendant's Criminal History Category overstates the seriousness of the defendant's Criminal History. The defendant should be entitled to a departure pursuant to U.S.S.G. 4A1(3)(b). Defendant received 7 Criminal History Points for a combination of State misdemeanor, and motor vehicle offenses, occurring more than 10 years ago. See paragraphs 283, 284, 286, 289 and 291. The receiving stolen property charge concerned a license plate; the larceny charge was a state misdemeanor, involving less than $200.00; in each case a nominal fine was imposed.

                                                    Respectfully submitted,
                                                    THE DEFENDANT

BY: /s/ Vincent A. Bongiorni, Esq.
95 State Street, Suite 309
Springfield, MA. 01103
(413) 732-0222
BBO #049040

CERTIFICATE OF SERVICE

I, Vincent A. Bongiorni, Esq., do hereby certify that I have served a copy of the foregoing via CM/ECF to the Assistant United States Attorney, William Welch, Esq., United States District Court, 1550 Main Street, Springfield, MA. 01103 this 27th day of September 2006.

/s/ Vincent A. Bongiorni