UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


| | |
|---|---|
| ANTHONY MATOS,<br>      Petitioner | )<br>)<br>) |
| v. | )   No. 04-cr-30046-MAP<br>)   No. 12-cv-30009-MAP |
| UNITED STATES OF AMERICA,<br>      Respondent | )<br>) |


MEMORANDUM AND ORDER REGARDING
PETITIONER'S MOTION TO VACATE
UNDER 28 U.S.C. § 2255
(Dkt. No. 477)

June 10, 2013

PONSOR, U.S.D.J.

## I. INTRODUCTION

Petitioner Anthony Matos has filed a habeas petition under 28 U.S.C. § 2255 challenging the performance of his trial and appellate attorneys. While these are claims that are normally appropriate for collateral review, Petitioner previously filed a § 2255 petition to reinstate his direct appeal after his trial attorney failed to file the notice of appeal as he requested. This petition is therefore technically a second petition requiring preclearance by the Court of Appeals under the First Circuit's Antiterrorism and Effective Death Penalty Act ("AEDPA") jurisprudence. While

Petitioner provides strong reasons for the court to review his ineffective assistance of trial counsel claims, this court lacks jurisdiction over these claims because they were not presented as claims for relief in his first petition. Petitioner's claims of ineffective <u>appellate</u> counsel could theoretically fit an exception to the preclearance requirement, but the record is clear that, as a matter of law, Mr. Matos was not prejudiced by any failures of his appellate counsel.  For these reasons, as elaborated below, the court will deny Petitioner's motion to vacate under 28 U.S.C. § 2255.

## II. <u>FACTS</u>

On May 4, 2006, Petitioner Anthony Matos pled guilty to three counts of wire fraud in violation of 18 U.S.C. § 1343 and one count of conspiracy to launder money in violation of 18 U.S.C. §§ 1956(h) and 1957.  Petitioner was one of a number of defendants indicted for and found guilty of an illegal land flip scheme that operated from approximately 1995 to May 2002.

The scheme worked as follows.  Several individuals, including Petitioner, purchased distressed properties in

low-income neighborhoods in and around the Springfield, Massachusetts area. The properties were then sold at much higher prices, often within days, to unsophisticated, low-income, first-time home buyers without the financial means to qualify for loans. Petitioner's co-conspirators included mortgage brokers, real estate appraisers, and a real estate attorney. The conspirators facilitated the sales by conducting fraudulent appraisals that over-valued the properties and creating fraudulent documents that allowed the otherwise unqualified purchasers to qualify for the loans. The conspirators divided the proceeds from the sales -- obtained from loans from various lending institutions -- among the individuals involved with a particular piece of property. The purchasers of the properties virtually always defaulted on their loans. The court found that Petitioner was responsible for around $1.6 million in losses due to his fraudulent activity as a participant in the scheme. (Dkt. No. 408, Sentencing Tr. 34:24.)

The Presentence Report ("PSR") and the plea agreement stated that Petitioner was subject to a statutory maximum term of imprisonment of thirty years on each of the wire

fraud counts and ten years on the money laundering court. During the plea colloquy, this court asked Petitioner if he understood the maximum penalties. At the court's request, the government stated that the maximum term of imprisonment for the wire fraud counts was thirty years. The court then informed Petitioner of the possibility of stacking the thirty-year maximum sentences on top of each other to impose a 90-year sentence.

At his sentencing on October 16, 2006, the court sentenced Petitioner to 84 months of concurrent imprisonment on each count and four years of supervised release. Petitioner was also ordered to pay restitution.

Originally, no notice of appeal was filed with the First Circuit. On December 14, 2007, Petitioner filed his first motion to vacate under 28 U.S.C. § 2255. As relief, Petitioner only requested "an ORDER requiring re-instatement of Petitioner's NOTICE OF APPEAL." (Dkt. No. 407, Pet'r's 2007 Mem. Mot. Vacate 1.) Petitioner signed an affidavit stating that he had requested that his attorney file a Notice of Appeal. Petitioner also submitted a supplemental briefing entitled, "Petitioner's Claims to be Presented on

-4-

Direct Appeal." (Dkt. No. 414.)  The supplemental claims to

be raised on appeal included an attack on the validity of

his plea:

> Matos's plea agreement was not intelligently
> entered because Matos's Attorney Vincent
> Bongiorni, Assistant United States Attorney
> William Welch and the Honorable Michael A. Ponsor
> all misinformed Matos of the maximum penalty
> authorized for a violation of 18 U.S.C. § 1343
> wire fraud offense which did not affect a
> financial institution and which had occurred prior
> to July 2, 2002.

(Dkt. No. 414 at 1.)

The supplemental filing did not directly ask for

additional relief but Petitioner did note that:

> the claims alleged herein have merit and are
> highly likely to be reversed and remanded on
> appeal if not vacated in this § 2255 proceeding
> under ineffective representation on the part of
> attorney Bongiorni.  Matos contends that the noted
> claims require that his sentence and convictions
> be vacated and the proceedings began [sic] anew.

(Dkt. No. 414 at 4.)

On February 2, 2009, this court allowed Petitioner's

motion and instructed the clerk to file a Notice of Appeal

on Petitioner's behalf within ten days of the issuance of

the memorandum and order.  (Dkt. No. 434.)  The court made

no findings and granted no relief regarding the ineffective

-5-

assistance of counsel claims, since Petitioner labeled them as claims he intended to raise on direct appeal.

On July 7, 2010, the First Circuit entered judgment vacating Petitioner's sentence and remanding the case for resentencing. The court's remand order mandated that the period of supervised release be reduced from four years to three, but in all other respects it affirmed Matos's sentence and conviction. United States v. Matos, 611 F.3d 31 (1st Cir. 2010), cert. denied, 131 S. Ct. 959 (2011). In its memorandum, the First Circuit held that this court incorrectly imposed an 84-month sentence on the wire fraud counts, which had a five-year statutory maximum because they did not affect a financial institution, but found the error harmless, because the sentences were concurrent with an identical 84-month sentence on the money laundering count, which had a ten-year statutory maximum. Matos, 611 F.3d at 35-36.

The First Circuit refused to consider Petitioner's argument that his money laundering conviction was improper in light of United States v. Santos, 553 U.S. 507 (2008), because Petitioner did not raise that argument until his

-6-

reply brief.  <u>Matos</u>, 611 F.3d at 37-38.  The First Circuit
reviewed the district court's calculation of Petitioner's
criminal history points and order of restitution for plain
error and found that the court did not commit plain error.

Petitioner filed the current petition on January 11,
2012, arguing that he received ineffective assistance of
counsel for four reasons: (1) trial counsel's failure to
point out that the statutory maximum for wire fraud was five
years rather than thirty years; (2) appellate counsel's
failure to object to his money laundering sentence under
<u>Santos</u>; (3) trial counsel's failure to make specific
objections to this court's calculation of the criminal
history category; and, (4) trial counsel's failure to object
to the district court's order of restitution.  Petitioner
requested that the court re-sentence him to no more than
five years imprisonment, which he had already served, and
vacate the order of restitution.  In the alternative,
Petitioner requested to withdraw his guilty plea because it
was not entered intelligently.

## III. <u>DISCUSSION</u>

Petitioner Matos presents multiple claims for § 2255

relief in his motion to vacate.  The ineffective assistance
of trial counsel claims are procedurally barred because
Petitioner did not have the petition -- his second under §
2255 -- precleared.  The ineffective assistance of appellate
counsel claim is properly presented in the petition, but it
is without merit because Petitioner was not prejudiced by
his appellate counsel's failure to raise <u>Santos</u>.  As will be
explained in more detail below, even assuming Petitioner is
correct in his interpretation of <u>Santos</u>, there is no
"merger" problem because the nature of the particular
fraudulent scheme that Petitioner participated in ensured
that virtually all of the scheme's cash flow constituted
"profits" and not merely receipts.

　　　To reach the merits of these claims, Petitioner first
must show that he met the procedural requirements for a
motion to vacate under § 2255.  A petitioner may only file
"[a] second or successive motion" if it has been certified
by a panel of the court of appeals to contain new evidence
or a new rule of constitutional law.  28 U.S.C. § 2255(h).

　　　Petitioner filed a motion under § 2255 on December 12,
2007, seeking to have the court enter an order to allow him

to file a Notice of Appeal when his attorney had failed to
file the notice pursuant to Petitioner's instructions.
(Dkt. No. 407, Mem. Law Pet.'r's Mot. Vacate 1, 3.)
Petitioner then filed this petition under § 2255 on January
11, 2012, arguing ineffective assistance of trial and
appellate counsel.

It cannot be denied that this is the second time that
Petitioner has asked this court for relief under § 2255.
While the Supreme Court has made clear that not every second
petition for habeas relief should be counted as a successive
petition for AEDPA purposes, see Stewart v. Martinez-
Villareal, 523 U.S. 637, 646 (1998), the First Circuit has
made it clear that all collateral claims must be raised in a
petitioner's first § 2255 motion, even if the first motion
only seeks to have a notice of appeal reinstated.  Pratt v.
United States, 129 F.3d 54, 61 (1st Cir. 1997), cert.
denied, 523 U.S. 1123 (1998).[1]

---

[1] As Petitioner notes, eight circuits have held that the
tally of applications resets to zero after the Petitioner
concludes a direct appeal that was ordered in response to an
earlier § 2255 petition which only requested a notice of
appeal be reinstated.  Urinyi v. U.S., 607 F.3d 318, 321 (2d
Cir. 2010) (per curiam); In re Olabode, 325 F.3d 166, 173 (3d
Cir. 2003); In re Goddard, 170 F.3d 435, 438 (4th Cir. 1999);

Just as in <u>Pratt</u>, Petitioner's attorney failed to perfect a timely appeal of the conviction despite requests from Petitioner. In both cases, the trial court re-instated the Notice of Appeal based on the first § 2255 petition. In <u>Pratt</u>, the First Circuit dismissed the second petition for failure to comport with AEDPA's preclearance prerequisite for second and successive petitions. The court noted, "[t]he requirement serves the singularly salutary purpose of forcing federal habeas petitioners to think through all potential post-conviction claims and to consolidate them for a unitary presentation to the district court. This exercise advances the cause of judicial efficiency and further justifies barring Pratt's second petition." <u>Pratt</u>, 129 F.3d at 61.

The Supreme Court and First Circuit have noted limited

<u>Storey v. Vasbinder</u>, 657 F.3d 372, 378 (6th Cir. 2011); <u>Shepeck v. U.S.</u>, 150 F.3d 800, 801 (7th Cir. 1998) (per curiam); <u>Johnson v. U.S.</u>, 362 F.3d 636, 638 (9th Cir. 2004); <u>U.S. v. Scott</u>, 124 F.3d 1328, 1330 (10th Cir. 1997) (per curiam); <u>McIver v. United States</u>, 307 F.3d 1327, 1332 (11th Cir. 2002). Only the Fifth Circuit has adopted the same rule as the First Circuit. <u>U.S. v. Orozco-Ramirez</u>, 211 F.3d 862, 869 (5th Cir. 2000). However, the First Circuit precedent is binding on this court, and the First Circuit has expressed no reservations about the continuing validity of <u>Pratt</u>. <u>Jamison v. United States</u>, 244 F.3d 44, 47 (2001).

-10-

exceptions to this rule: (1) if the initial petition was
dismissed for failure to exhaust state remedies, <u>Slack v.
McDaniel</u>, 529 U.S. 473 (2000); (2) if the original petition
did not produce an adjudication on the merits, <u>Pratt</u>, 129
F.3d at 60; (3) where the later petition raised the same
grounds as a previous petition that had been dismissed as
premature, <u>Stewart v. Martinez-Villareal</u>, 523 U.S. 637, 643
(1998); and (4) if the second petition pointed to a claim of
error unavailable the first time around, <u>Pratt</u>, 129 F.3d at
62.

A.    <u>Ineffective Assistance of Trial Counsel</u>.

        Three of Petitioner's claims for relief offer
ineffective assistance of trial counsel claims: failure to
raise issues relating to the proper maximum sentence and the
impact of that failure on the plea hearing, failure to
object to the sentencing court's order of restitution, and
failure to make specific objections to the sentencing
court's calculation of criminal history points.  These
claims for relief could have been raised in Petitioner's
first § 2255 petition.  While Petitioner did mention several
of these issues in his first § 2255 petition, they were
merely part of a supplemental filing that included a longer

list of arguments to be raised on appeal.  These arguments
were not treated as separate grounds for relief under §
2255.  Instead, the "sole issue" raised in the first § 2255
petition was "whether Petitioner's attorney failed to file a
notice of appeal."  (Dkt. No. 434, Mem. & Order Pet. Vacate
1, Feb. 2, 2009.)  The court did not dismiss any claims as
premature nor did the court retain jurisdiction over any
collateral claims.

    This court provided a final ruling on the merits of the
initial petition on February 2, 2009, and reinstated
Petitioner's Notice of Appeal.  (<u>Id.</u>)  All of Petitioner's
ineffective assistance of trial counsel claims are therefore
procedurally barred unless Petitioner receives preclearance
from the First Circuit.

    While it is clear that the <u>Pratt</u> rule requires the
dismissal of Petitioner's ineffective assistance of trial
counsel claims, it is impossible to avoid recognizing that
Petitioner's situation here raises many of the problems that
other circuits have found persuasive in deciding that, when
a first § 2255 is granted to reinstate a direct appeal, the
counter of collateral attacks pursued should be reset to
zero.  The Fourth Circuit has most cogently laid out the
problems of requiring prisoners to present all of their

collateral challenges (but not their appellate claims) in their first petition when they seek to have a notice of appeal reinstated.  The difficulty with this approach:

> is that a prisoner moving to get his appeal right reinstated is proceeding without counsel.  We cannot expect him to analyze his claims and make judgment calls about which ones are truly collateral and which ones are better reserved for direct appeal.  Placing this burden on a prisoner who has lost his appeal rights would put him in a position inferior to that of a defendant whose lawyer filed a timely notice of appeal.  In the second instance, the defendant receives the assistance of counsel in identifying issues appropriate for direct review before any issue has been raised unnecessarily (and ill-advisedly) in a collateral motion.

Goddard, 170 F.3d at 437 n.1; see also McIver, 307 F.3d at 1332 n.2 (11th Cir. 2002).

Even the First Circuit has recognized that the current system could result in district courts giving "natural priority . . . to the reinstatement claim" and giving "short shrift to, or otherwise prejudice treatment of, the remaining claims."  Jamison, 244 F.3d at 47.  The First Circuit noted that "[j]ust how real the threat may be is a matter of reasonable dispute."  Id.  This case may provide an opportunity for the First Circuit to re-think its holding in Pratt in light of the logic of Goddard and the other

-13-

contrary cases, or to suggest ways in which a trial court
may protect against the potential for unfairness that the
preclearance rule inevitably generates in this situation.

B.   Ineffective Assistance of Appellate Counsel.

Petitioner's ineffective assistance of appellate
counsel claim may fit into one of the exceptions to
preclearance.  Obviously, an ineffective assistance of
appellate counsel claim could not have been raised until
Petitioner actually proceeded with his appeal.  This
scenario seems to fit into the fourth exception listed in
Pratt: a second petition that raises a claim of error
unavailable at the time of the first petition.  129 F.3d at
62.

The First Circuit has not explicitly recognized this
particular application of the exception.  However, a failure
to raise ineffective assistance of appellate counsel is
similar to other errors in further proceedings that the
First Circuit has recognized.  "[T]he prisoner is seeking
redress for errors that he could not have challenged in a
prior post-conviction proceeding unless he was clairvoyant."
Pratt, 129 F.3d at 63.  The challenged errors of appellate

-14-

counsel are not "unpursued errors arising out of events that
occurred before the filing of the initial habeas petition"
but, instead, new errors that have arisen out of proceedings
that occurred after Petitioner's initial petition was filed.
Id.

Petitioner argues that his appellate attorney was
ineffective because he failed to argue that the higher
statutory maximum for money laundering should have "merged"
with the wire fraud convictions under the Supreme Court's
decision in Santos, 553 U.S. 507 (2008).

To demonstrate ineffective assistance of counsel,
Petitioner must show that counsel's performance was
deficient and that the deficiency prejudiced the petitioner.
Strickland v. Washington, 466 U.S. 668, 687 (1984).
Counsel's performance must "[fall] below an objective
standard of reasonableness . . . under prevailing
professional norms." Id. at 688. Petitioner must overcome
a "strong presumption that counsel's conduct falls within a
wide range of reasonable professional assistance."
Singleton v. United States, 26 F.3d 233, 238 (1st Cir.
1994).

Petitioner argues that his appellate counsel failed to raise a promising argument -- which could have reduced his sentence from 84 months to 60 -- until the reply brief. Six months before this court ordered that a Notice of Appeal be filed and over a year before Mr. Matos's brief was filed with the First Circuit, the Supreme Court issued an opinion in <u>Santos</u>, 553 U.S. 507 (2008). The decision had no majority opinion. The plurality opinion was written by Justice Scalia, and Justice Stevens's concurrence was the narrowest opinion. The Court held that "proceeds" in the money laundering statute[2] referred to profits and not receipts, in the case of an illegal gambling operation. Justice Stevens noted if promotion in the money laundering statute included the

> mere payment of the expense of operating an
> illegal gambling business as a separate offense

---

[2] "Whoever, knowing that the property involved in a financial transaction <u>represents the proceeds of some form of unlawful activity</u>, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity -- <u>with the intent to promote the carrying on of specified unlawful activity</u> . . . shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both." 18 U.S.C. § 1956 (emphasis added).

[it] is in practical effect tantamount to double
jeopardy, which is particularly unfair in this
case because the penalties for money laundering
are substantially more than those for the
underlying offense of operating a gambling
business.

Santos, 553 U.S. at 527 (Stevens, J., concurring).

Justice Stevens limited his interpretation of the term
"proceeds" to the context of a gambling business paying
essential expenses.  Santos, 553 U.S. at 528.

Justice Stevens's concurrence refused to broaden the
application of this interpretation of proceeds to other
predicate crimes and even noted two crimes where he would
not interpret "proceeds" to mean profits -- the sale of
contraband and the operation of organized crime syndicates.
The plurality opinion provided a much broader basis for the
ruling.  Justice Scalia writing for the plurality noted that
"[t]he merger problem is not limited to lottery operators .
. . . Anyone who pays for the costs of a crime with
proceeds . . . would violate the money-laundering statute."
Santos, 553 U.S. at 516.

Petitioner contends that the government never
adequately demonstrated that the money laundering he pled
guilty to in this case was done with profits.  As a result,

-17-

he argues, the government improperly took a transaction that had already been punished through the wire fraud statute and "radically increase[d] the sentence for that crime" through the money-laundering charge. Santos, 553 U.S. at 517. As Petitioner argues, the Santos decision should have provided a fruitful ground to challenge his conviction on appeal, because the wire fraud and money laundering counts were based on "the same factual allegations." (Dkt. No. 483, Mem. Law Pet.'r's Mot. 8.) Petitioner contends that the failure of his appellate counsel to make this argument before the reply brief constituted ineffective assistance of appellate counsel.

Despite Petitioner's extended briefing on the proper interpretation of the Santos decision, it is apparent that his appellate counsel's decision not to raise the argument to the First Circuit was neither a deficient performance nor prejudicial. To demonstrate a deficient performance, Petitioner must show that an attack on his sentence based on Santos "was so obvious and promising that no competent lawyer could have failed to pursue it." Arroyo v. U.S., 195 F.3d 54, 55 (1st Cir. 1999).

While some courts have recognized that a failure to
address the impact of recently decided Supreme Court cases
can constitute a deficient performance, those cases involved
"a sea change" in the law such as United States v. Booker,
543 U.S. 220 (2005). Richardson v. United States, 477 F.
Supp. 2d 392, 398 (D. Mass. 2007); see also Ballard v.
United States, 400 F.3d 404, 407 (6th Cir. 2005) (noting
that appellate lawyers should be aware of important and
relevant changes in the law such as Apprendi v. New Jersey,
530 U.S. 466 (2000)). The Supreme Court's decision in
Santos did not represent a sea change moment in the same way
that both Booker and Apprendi did.

Moreover, the holding in Santos is far from straight-
forward. As Petitioner's current counsel admits "the Santos
merger holding has proved difficult [to] understand." (Dkt.
No. 493, Suppl. Mem. Supp. Pet. 7.) In its decision to
vacate Petitioner's sentence, the First Circuit declined to
respond to the Santos argument because it was brought up in
the reply brief. But it also noted that "it is hardly
certain that the Santos holding would have any application
here." Matos, 611 F.3d at 38. It was not deficient for

appellate counsel to focus on more successful arguments and leave out a complicated argument that may not be applicable to the wire fraud context.

Finally, even if the court believed that appellate counsel's performance was deficient in failing to raise the Santos issue, Petitioner still could not make out an ineffective assistance of appellate counsel claim. Petitioner must also show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Here, no viable claim of prejudice exists, because Petitioner clearly would not have prevailed on the merits of any Santos claim.

Petitioner argues that if the merger doctrine applies, the government would need to show that the money laundering indictment was based on the disposition of proceeds: "receipts from the charged unlawful act [that] exceeded the costs fairly attributable to it." Santos, 553 U.S. at 520 (Scalia, J., plurality opinion). The plurality noted that "the prosecution needs to show only that a single instance of specified unlawful activity was profitable and gave rise

to the money involved in the charged transaction."  Santos,
553 U.S. at 520.

Here there is no problem with merger because the cash
flow generated by the illegal scheme that Petitioner
participated in was virtually all profits.  The indictment
specifically noted that the object of the conspiracy
included "distributing the net profits of the wire fraud
scheme." (Dkt. No. 104-2, Superseding Indictment ¶ 26.)
And during the plea colloquy, Defendant admitted that he
did, in fact, conspire to launder money "to distribute
profits of the wire fraud scheme." (Dkt. No. 444, Change of
Plea Tr. 25:4-12.)

The very nature of the fraud was such that a huge
percentage of the cash flow coming in was profits, not
merely receipts being paid out to cover the costs of the
operation.  The land flip scheme required little or no
investment of cash.[3]  The only regular expense was a modest
fee (typically $2,000) to the people who located the
purchasers.  The rest was profit, and the profits were often

---

[3] This is in contrast to the gambling operation at issue
in Santos where the defendant had runners, collectors, and
winners to pay off in order to continue the operation.

large.  The properties were purchased for a fraction of what they were sold for, and the "flip" (re-sale at the much higher price) occurred within days of the original purchase. In short, this fraudulent scheme created virtually pure profits for the conspirators.

The conspiracy to launder money count, to which Petitioner pled guilty, provided an example of one such transaction in which Petitioner was directly involved.  The government alleged that on August 19, 1999, Defendants Bergdoll, Matos, Jarrett, Smith, Frederick, and Innarelli "fraudulently caused Equicredit Corporation to wire approximately $73,970 into Innarelli's IOLTA account for the sale of 38-40 Clarendon Street, Springfield, MA." (Dkt. No. 104-2, Superseding Indictment ¶ 27, at 24.)  The property at 38-40 Clarendon Street was sold by the conspirators a day before it was purchased by them, and Petitioner conceded at his sentencing that this sale involved a real victim of a fraudulent scheme. (Dkt. No. 408, Sentencing Tr. 408 44:2-7, 91:16-24.)  There is little doubt that Defendants conspired to distribute the net profits from their wire fraud scheme through money laundering.

In short, the <u>Santos</u> "merger" escape hatch simply was not available to Petitioner, given the nature of the conspiracy he participated in.  Appellate counsel's failure to raise <u>Santos</u> until the reply brief thus did not prejudice Petitioner.  For this reason, any claim for ineffective assistance of appellate counsel must be dismissed.

## IV. <u>CONCLUSION</u>

Petitioner's ineffective assistance of trial counsel claims require preclearance by the First Circuit, under the holding in <u>Pratt</u>, because they could have been raised as claims for relief in his first petition.  Petitioner's ineffective assistance of appellate counsel claims do not require preclearance, but Petitioner, for the reasons stated, cannot show that he was prejudiced by his appellate counsel's failure to raise the <u>Santos</u> argument in his initial briefing.

For the foregoing reasons, Petitioner's motion to vacate under 28 U.S.C. § 2255 (Dkt. No. 477) is hereby DENIED, and the petition is ordered dismissed.  This case may now be closed.

It is So Ordered.

/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U. S. District Judge